## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| **FMIO, INC., a Michigan corporation and RICHARD A. GARST,** | ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No.** |
| **v.** | ) ) | **HONORABLE** |
| **TOWNSHIP OF SUMMERFIELD, MICHIGAN, a Michigan municipal corporation, KEVIN R. IOTT in his official and individual capacities, TAMMY BLEASKA, in her official and individual capacities, JOAN WIEDERHOLD, in her official and individual capacities, DALE WAGENKNECHT, in his official and individual capacities, JAMES V. SEEGERT, in his official and individual capacities, AMY REITER, in her official and individual capacities, RICHARD KORALESKI, in his official and individual capacities, DAVID GRUDE, in his official and individual capacities, JOSEPH STRANGER, in his official and individual capacities, LINDA DIESING, in her official and individual capacities, and MICHAEL STRAHAN, in his official and individual capacities, jointly and severally,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

_____

## COMPLAINT FOR DAMAGES
## <u>AND INJUNCTIVE RELIEF</u>

Plaintiffs FMIO, Inc. and Richard A. Garst, by and through their attorneys,

The Victor Firm, PLLC, hereby state for their complaint against defendants the

Township of Summerfield, Michigan, Kevin R. Iott, in his official and individual

capacities, Tammy Bleaska, in her official and individual capacities, Joan

Wiederhold, in her official and individual capacities, Dale Wagenknecht, in his official and individual capacities, James V. Seegert, in his official and individual capacities, Amy Reiter, in her official and individual capacities, Richard Koraleski, in his official and individual capacities, David Grude, in his official and individual capacities, Joseph Stranger, in his official and individual capacities, Linda Diesing, in her official and individual capacities, and Michael Strahan, in his official and individual capacities, jointly and severally, as follows:

## **JURISDICTION**

1.      This is a civil action:

(a)      Arising under the Constitution and laws of the United States and this Court has original federal jurisdiction pursuant to 28 U.S.C. §1331;

(b)      To redress the deprivation, under the color of law, of the rights, privileges and immunities of plaintiffs secured by the Constitution of the United States providing for equal rights of its citizens and of all persons of any jurisdiction in the United States, and this Court has original jurisdiction pursuant to 28 U.S.C. §1343(3); and

(c)      For declaratory judgment and injunctive relief pursuant to 42 U.S.C. §1983 and this Court has jurisdiction pursuant to 28 U.S.C. §1343(4).

2.      The principal events giving rise to the claims stated herein occurred in this District and venue is therefore proper in this District pursuant to 28 U.S.C. §1391(b).

3.      This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

## THE PARTIES

4.     Plaintiff FMIO, Inc. (hereinafter "FMIO") is a Michigan corporation organized and existing under the laws of Michigan, with its principal office and place of business located in Monroe County, Michigan.

5.     Richard A. Garst is an individual who resides in Monroe County, Michigan.

6.     Defendant the Township of Summerfield, Michigan ("Summerfield Township") is a Michigan municipal corporation existing in Monroe County and organized under the laws of the State of Michigan.

7.     Defendant Kevin R. Iott is the Summerfield Township Supervisor and a resident of Summerfield Township, Monroe County, Michigan, and is being sued in his individual and official capacities.  As Supervisor, defendant Iott is the chief administrative and executive officer of Summerfield Township.  By virtue of his office, defendant Iott is a policy-making and decision-making official for Summerfield Township.

8.     Defendant Tammy Bleaska is the Summerfield Township Clerk and a resident of Summerfield Township, Monroe County, Michigan, and is being sued in her individual and official capacities.  By virtue of her office, defendant Bleaska is a policy-making and decision-making official for Summerfield Township.

9.     Defendant Joan Wiederhold is the Summerfield Township Treasurer and a member of the Summerfield Township Planning Commission, and a resident of Summerfield Township Township, Monroe County, Michigan.

Defendant Wiederhold is being sued in her individual and official capacities.  By virtue of her office, defendant Wiederhold is a policy-making and decision-making official for Summerfield Township.

10.    Defendant James V. Seegert is a Summerfield Township Trustee and a resident of Summerfield Township, Monroe County, Michigan, and is being sued in his individual and official capacities.  By virtue of his office, defendant Seegert is a policy-making and decision-making official for Summerfield Township.

11.    Defendant Amy Reiter is the Chairperson of the Summerfield Township Planning Commission and Chairperson of the Summerfield Zoning Board of Appeals, and is a resident of Summerfield Township, Monroe County, Michigan.  Defendant Reiter is being sued in her individual and official capacities. By virtue of her office, defendant Reiter is a policy-making and decision-making official for Summerfield Township.

12.    Defendant Richard Koraleski is a member of the Summerfield Township Planning Commission and is a resident of Summerfield Township, Monroe County, Michigan, and is being sued in his individual and official capacities.  By virtue of his office, defendant Koraleski is a policy-making and decision-making official for Summerfield Township.

13.    Defendant David Grude is a member of the Summerfield Township Planning Commission and is a resident of Summerfield Township, Monroe County, Michigan, and is being sued in his individual and official capacities.  By

virtue of his office, defendant Grude is a policy-making and decision-making official for Summerfield Township.

14.     Defendant Joseph Stranger is a member of the Summerfield Township Planning Commission and is a resident of Summerfield Township, Monroe County, Michigan, and is being sued in his individual and official capacities.  By virtue of his office, defendant Stranger is a policy-making and decision-making official for Summerfield Township.

15.     Defendant Linda Diesing is a member of the Summerfield Township Zoning Board of Appeals, and is a resident of Summerfield Township, Monroe County, Michigan, and is being sued in her individual and official capacities.  By virtue of her office, defendant Diesing is a policy-making and decision-making official for Summerfield Township.

16.     Defendant Michael Strahan is a member of the Summerfield Township Zoning Board of Appeals and is a resident of Summerfield Township, Monroe County, Michigan, and is being sued in his individual and official capacities.  By virtue of his office, defendant Strahan is a policy-making and decision-making official for Summerfield Township.

## **FACTUAL ALLEGATIONS**

17.     The property that is the subject of this complaint is an approximately one (0.927) acre parcel of real property, located at 4019 Sylvania-Petersburg Road, Summerfield Township, in Monroe County, Michigan (the "Property") (a copy of the legal description of the Property is attached hereto as Exhibit 1).

18.     The property is zoned for local commercial uses pursuant to the Summerfield Township zoning ordinances.

19.     FMIO is the fee title owner of the Property.

20.     Plaintiff Richard Garst is an agent of FMIO, and has the authority to act on its behalf.

21.     FMIO purchased the Property to utilize it for all the uses allowed by Summerfield Township for property located in the local commercial zoning district, including, but not limited to, the construction of a business dwelling for the purpose of selling farm produce, as well as all other generally recognized local commercial purposes.

22.     The Property has access to and/or otherwise abuts a public highway, which is Sylvania-Petersburg Road.

23.     On or about November 2000, plaintiff Garst attended a public meeting of the Summerfield Township Board, and during the portion dedicated to the discussion of the Fire Report, Garst inquired about an alleged child pornography incident which may have occurred at the Summerfield Township Fire Hall ("Fire Hall").

24.     The Summerfield Township Board advised Garst that "this was not the proper time" to discuss the alleged child pornography incident and refused to discuss the matter.  Additionally, Garst was told that in the future, he should ask to be on the agenda if he wanted to speak at Township Board meetings (a copy of the minutes of the November 8, 2000 meeting of the Summerfield Township Board is attached hereto as Exhibit 2).

25.     On April 11, 2002, a computer located in the Fire Hall was confiscated by the Michigan State Police as a result of an on-going investigation conducted by Detective Alison D. King of alleged child pornography incidents occurring at the Fire Hall (a copy of an article from *The Monroe Evening News* is attached hereto as Exhibit 3).

26.     When the investigation of alleged child pornography incidents occurring at the Fire Hall began, Nick Lucas was the Fire Chief for Summerfield Township.  At that time, Zelda Lucas, who is the mother of Nick Lucas, was the Supervisor of Summerfield Township.

27.     On or about April 2002, Garst attended a regular meeting of the Summerfield Township Board, and inquired about the confiscation of a computer at the Fire Hall and the allegations of child pornography incidents occurring at the Fire Hall.  The Summerfield Township Board refused to provide any information regarding the confiscation of the Fire Hall's computer or the allegations of child pornography incidents occurring at the Fire Hall, at which time Garst asked the members of the Summerfield Township Board to resign.

28.     Garst was concerned about the alleged child pornography incidents occurring at the Fire Hall and believed that the Summerfield Township Board needed to address the concerns of its residents, and at the very least, inform the residents what the Summerfield Township Board was doing to protect the children in the community.

29.     On or about April 2002, Garst sought to circulate recall petitions, seeking to recall some of the members serving on the Summerfield Township

Board, including then-Supervisor Zelda Lucas, defendant Clerk Tammy Bleashka, defendant Treasurer Joan Wiederhold and then-Trustee Fred Smith.

29.     Before Garst began circulating the recall petitions, he was asked by Detective King to hold off on circulating the recall petitions until she could complete her investigation of the pornography allegations occurring at the Fire Hall.

30.     Although the language on the recall petitions was approved at clarity hearings which were held on May 22 and June 4, 2002, Garst complied with Detective King's request and allowed the six-month deadline to lapse without collecting any signatures.

31.     On March 17, 2003, Garst attended a Summerfield Township Board meeting where he stated that there were certain Summerfield Township firemen that should not be around children because the Federal Bureau of Investigations ("the FBI") investigation of alleged child pornography incidents occurring at the Fire Hall was still an open investigation.

32.     When Garst received an approved written copy of the meeting minutes of the March 17, 2003 Summerfield Township Board meeting, he discovered that the minutes reflected that he had suggested that Randy LaRocca was one of the individuals under investigation by the FBI.

33.     Garst did not suggest that Randy LaRocca was under investigation by the FBI; instead, Garst said at the March 17, 2003, Township Board meeting that Randy LaRocca was the only person at the Fire Hall he could trust (a copy of

the minutes of the March 17, 2003 meeting of the Summerfield Township Board is attached hereto as Exhibit 4).

34.     The change in the minutes was a deliberate act by defendants designed to chill Garst from exercising his First Amendment rights to speak at public meetings and petition the government for redress of grievances.

35.     In 2000, Garst entered into a lease agreement with Summerfield Township to lease approximately 72 acres of farm property located on Ida West Road for the amount of $6,550.00 per year, with the lease guaranteed to run through at least December 31, 2003 (a copy of the lease agreement is attached hereto as Exhibit 5).

36.     On September 17, 2003, Garst received a letter from Summerfield Township informing him that as a result of interest shown by other parties, the Summerfield Township Board decided not to renew his lease agreement.

37.     However, on September 25, 2003, the Summerfield Township Board placed an advertisement in *The Independent* seeking bids for approximately 69 of 77 acres of farm property located on Ida West Road (a copy of this newspaper advertisement is attached hereto as Exhibit 6).

38.     On November 5, 2003, the Summerfield Township Board sent a letter to Howard Keinath to inform him that he was the highest bidder on the 69 acres of farm property located on Ida West Road (a copy of this letter is attached hereto as Exhibit 7).

39.     On March 2, 2004, Summerfield Township and Howard Keinath entered in a lease agreement for 67 acres of farm property located on Ida West

Road for the amount of $7,705.00 per year, with the term of the lease being from March 2, 2004 through December 31, 2006 (a copy of this lease agreement is attached hereto as Exhibit 8).

40.     On May 4, 2008, Garst entered into a lease agreement with Summerfield Township for approximately 67 acres of farm property located on Ida West Road from Summerfield Township for the amount of $12,797.00 per year, with a guaranteed lease period through December 31, 2008 (a copy of this lease agreement is attached hereto as Exhibit 9).

41.     Defendants' refusal to renew Summerfield Township's lease agreement with Garst was a deliberate act in retaliation for Garst having sought to recall certain members of the Summerfield Township Board.

42.     The renewal of the lease in 2008 for terms that were far more favorable to Summerfield Township than that for which the previous lease agreements provided was a deliberate act to retaliate against plaintiffs for exercising their First Amendment rights.

43.     Defendants committed further acts of retaliation against plaintiffs for Garst's exercise of his rights as a citizen to recall certain members of the Summerfield Township Board.

44.     On October 28, 2004, Zelda Lucas, then-Supervisor of Summerfield Township, and defendant Kevin R. Iott, then-candidate for the office of Supervisor of Summerfield Township, served a personal protection order on Garst that prevented him from attending Summerfield Township Board meetings.

45.     Sometime in late 2004 or early 2005, Nick Lucas, the Fire Chief of Summerfield Township, wrongfully filed assault charges against Garst.

46.     Garst was acquitted of these false charges on July 12, 2005, after a jury trial.

47.     Garst was forced to incur considerable expenses to fight against the false accusations made by defendants and the Fire Chief.

48.     On February 22, 2005, Garst received a letter from Peter Fales, an attorney for David Kottke, who serves as the cemetery sexton for Summerfield Township, in which Garst was advised that Kottke was upset over a slanderous comment attributed to Garst in the minutes of the August 16, 2004 meeting of the Summerfield Township Board (a copy of the February 22, 2005 correspondence is attached hereto as Exhibit 10).

49.     Garst responded to Fales' letter on March 15, 2005, and explained that he had not made the slanderous comment, that he asked the Summerfield Township Board to correct the meeting minutes, and that the issue of incorrect statements being printed by defendant Clerk Bleaska in the meeting minutes of the Summerfield Township Board was an on-going issue which has been acknowledged and addressed by the Summerfield Township Board (a copy of Garst's March 15, 2005 correspondence to Fales is attached hereto as Exhibit 11).

50.     The false statements attributed to Garst in the minutes was a deliberate act by defendants designed to chill Garst from exercising his First

Amendment rights to speak at public meetings and petition the government for redress of grievances.

51.     On May 15, 2006, the Summerfield Township Board voted to increase the application fee for site plan review from $300.00 to $2,000.00, effective July 1, 2006 (a copy of the minutes of the May 15, 2006 meeting of the Summerfield Township Board is attached hereto as Exhibit 12).

52.     At the time the ordinance was passed, FMIO was in the process of developing the plans necessary to demolish its old produce stand and replace it with a new one.  Approval of the site plan for the new produce stand was critical for FMIO because the setback requirements for commercial buildings had changed since the old produce stand was constructed and FMIO wanted to maintain its non-conforming status.

53.     On June 29, 2006, at 9:30 a.m., Garst called Jack Lange, building inspector of Summerfield Township, to inquire as to where the site plan review packet needed to be delivered.  Lange advised Garst that the site plan review packet needed to be delivered to the Summerfield Township Hall.

54.     On June 29, 2006, Garst delivered FMIO's site plan review packet for the new produce stand to the Summerfield Township Hall.  The site plan review packet contained:  (1) a cover letter; (2) a $300.00 check for the application fee; (3) the application for site plan review; (4) the engineered site plan for the proposed produce stand; (5) a report from George B. Warnke, Jr., Registered Land Surveyor; (6) a description of the proposed new produce stand;

and (7) a demolition permit for the old produce stand (a copy of the site plan review packet is attached hereto as Exhibit 13).

55.     Sometime in September 2006, after Garst had not heard anything from Summerfield Township regarding FMIO's application for site plan review, Garst spoke with defendant Amy Reiter, Chairperson of the Summerfield Township Planning Commission, and inquired into the progress of the site plan application which he and FMIO had submitted.

56.     Defendant Reiter assured Garst that she would check into the progress of FMIO's site plan application and call him back to inform him of the progress of FMIO's site plan application.  Garst did not receive any information as to the progress of FMIO's site plan application from defendant Reiter or any other defendant or other Summerfield Township official.

57.     On November 13, 2006, Summerfield Township informed Garst that it did not have the check which FMIO had submitted with its site plan review application packet on June 29, 2006.

58.     FMIO immediately issued a certified check in the amount of $300.00 to Summerfield Township on that very same day, November 13, 2006 (a copy of the certified check is attached hereto as Exhibit 14).

59.     On or about November 20, 2006, Summerfield Township informed Garst that it could not find FMIO's site plan application.

60.     On or about December 2006, Summerfield Township informed Garst that it found the engineered drawings of FMIO's new proposed produce

stand, but it still was unable to find the site plan application which FMIO had submitted.

61. Throughout 2007, Garst continued to inquire into the progress of FMIO's site plan application.

62. Defendant Township Supervisor Kevin R. Iott told Garst that if he wanted to get FMIO's new produce stand approved, FMIO had to resubmit everything along with the new $2,000.00 application fee.

63. As of the date of this complaint, defendants have still wrongfully refused to process plaintiffs' application for site plan review, a ministerial act which they cannot refuse to do.

64. Plaintiffs' proposed use of the Property is a reasonable and a principal permitted use allowed by the Summerfield Township Zoning Ordinance.

65. Plaintiffs' application for site plan review was completed and prepared in accordance with the Summerfield Township ordinances in effect at the time plaintiffs submitted their application for site plan review.

66. Defendants' actions in wrongfully refusing to process plaintiffs' application for site plan review have deprived plaintiffs of the use of their land and have damaged plaintiffs.

67. On September 15, 2008, the Summerfield Township Board adopted a new Dangerous Building Ordinance.

68. Section IV (D) of the new Dangerous Building Ordinance provides:

> **Service of Notice.** The notice shall be in writing and shall be served upon the person to whom the notice is

> directed either personally or by certified mail, return receipt requested, addressed to the owner or party in interest at the address shown on the tax records.  If a notice is served upon a person by certified mail, a copy of notice shall also be posted upon a conspicuous part of the building or structure.  The notice shall be served upon the owner or party in interest at least 10 days before the date of the hearing included in the notice.

(a copy of Summerfield Township's Dangerous Building Ordinance is attached hereto as Exhibit 15).

69.    On April 4, 2009, Garst received a letter from Michael Mihalec, Ordinance Enforcement Officer for Summerfield Township, advising him that there would be a dangerous building inspection and hearing to be held at 4019 Sylvania-Petersburg Road, on Wednesday, April 22, 2009 at 10:00 a.m. (a copy of Mihalec's April 4, 2009 correspondence to Garst is attached hereto as Exhibit 16).

70.    There was no filing of a written complaint and no notice was posted at the 4019 Sylvania-Petersburg Road address as required by the Summerfield Township Dangerous Building Ordinance.

71.    On April 13, 2009, Garst sent Summerfield Township a written request to be put on the agenda for the April 20, 2009, meeting of the Summerfield Township Board.

72.    The printed agenda for the April 20, 2009, Summerfield Township Board meeting set forth that Garst was scheduled to speak during the New Business portion of the meeting.

73.     During the April 20, 2009 Summerfield Township Board meeting, Garst asked the Summerfield Township Board as to the status of FMIO's site plan review application and attempted to present evidence that the site plan review application was submitted almost three years earlier.  However, Conly K. Crossley, Summerfield Township attorney, refused to allow Garst to discuss the issue, and told Garst that he could present his evidence at the "Dangerous Building Hearing" which was to be held on April 22, 2009 (a copy of the article in *The Independent* setting forth this discussion is attached hereto as Exhibit 17).

74.     When Garst was told that he could not discuss the issue that FMIO's site plan review application had been pending without any action for almost three years, he immediately stopped discussing the issue.

75.     However, since Garst had not used his allotted time to speak, he brought to the attention of the Summerfield Township Board that a commercial trucking business and/or commercial trucking terminal was wrongfully operating and/or being allowed to operate in Summerfield Township (Exhibit 17).

76.     Garst informed the Summerfield Township Board that the commercial trucking business and/or commercial trucking terminal was located on property which was leased by Mark LaRocca, the Summerfield Township Constable, who was defendant Supervior Iott's brother-in-law, and that defendant Supervisor Iott, who drove a truck for Mark LaRocca's business, parked the truck which he drove at the illegal commercial trucking business and/or commercial trucking terminal.

77.     Summerfield Township attorney Crossley stopped Garst from speaking, and again told him that he could not bring this forward at a public meeting, but instead, was limited to speaking only at the "Dangerous Building Hearing."  Summerfield Township attorney Crossley then declared that the "public comment" was over (Exhibit 17).

78.     Defendants' actions wrongly violated Garst's rights under the First Amendment to the United States Constitution to speak at a public meeting and petition the government for redress of grievances.

79.     On Wednesday, April 22, 2009, at 10:00 a.m., defendant Supervisor Iott, defendant Clerk Bleaska, defendant Trustee Wagenknecht, Township Building Inspector Jack Lange, Township Fire Chief Nick Lucas, Township attorney Crossley and purported hearing officer Paul Delise showed up at plaintiffs' property at 4019 Sylvania-Petersburg Road for the "Dangerous Building Hearing."

80.     Defendants had not provided plaintiffs with any notice of which individuals would attend this hearing, or how it would be conducted, or even of the charges against plaintiffs which gave rise to this hearing.

81.     Garst asked Township attorney Crossley if anyone had ever posted a notice on the alleged "dangerous building," as required by Section IV(D) of the Summerfield Township Dangerous Building Ordinance.

82.     Summerfield Township attorney Crossley verified with the others present for the "hearing" that no notice had ever been posted on the building.

83.    Once this had been established, Garst advised those present on behalf of Summerfield Township that they had failed to comply with the requirements of the very ordinance which they had passed or for which they had the duty to enforce.

84.    Once they learned this information, those present on behalf of Summerfield Township at plaintiffs' property for the alleged "Dangerous Building Ordinance" left plaintiffs' property, and as they left, Summerfield Township attorney Crossley turned back to taunt Garst by saying that next time, "they would do it right" (Exhibit 17).

85.    Even though there are many other structures which would fall under the provisions of the Summerfield Township Dangerous Building Ordinance, Summerfield Township has never taken any action to enforce the ordinance against those property owners, or any property owner other than plaintiffs.

86.    On April 29, 2009, a meeting was held at the Summerfield Township Hall to discuss how to resolve the issue of FMIO's site plan review application, on which defendants had failed to take any action for almost three years.

87.    In attendance at this meeting were defendant Supervisor Iott, defendant Planning Commission Chair Reiter, Township building inspector Lange, Township enforcement officer Mihalec and Township attorney Crossley. This meeting did not include the Township Clerk, Township Treasurer, or either of the two Township trustees.

88.     No notice of a special Township meeting had ever been posted by defendants.

89.     On April 30, 2009, defendant Reiter drafted a letter to Garst which stated that, in an attempt to resolve the issue of FMIO's unprocessed site plan review application, Summerfield Township would require FMIO to: (1) reapply for site plan review; (2) pay an application fee of $300; (3) be financially responsible for outside consulting fees; (4) after approval from the Summerfield Township Planning Commission, obtain a building permit from the Summerfield Township building inspector; (5) be financially responsible for any fees which the Summerfield Township building inspector incurred; and (6) tear down the old produce stand within 90 days of receiving a building permit for the new produce stand (a copy of defendant Reiter's April 30, 2009 letter to Garst is attached hereto as Exhibit 18).

90.     The procedures, reviews and fees set forth in defendant Reiter's April 30, 2009, letter to Garst do not reflect the procedures, reviews or fees which any other resident of Summerfield Township has had to follow when submitting an application for site plan review, whether the site plan was submitted in 2006 or in 2009.

91.     The April 30, 2009 letter to Garst was never discussed or approved at a public meeting of the Summerfield Township Board prior to its delivery to Garst.

92.     The Summerfield Township Board did not discuss or approve the correspondence to Garst until the regular public meeting of the Summerfield Township Board on May 18, 2009.

93.     Defendant Supervisor Iott does not have the authority to change, modify or add to the procedures for an application for site plan review without obtaining prior approval of the Summerfield Township Board.

94.     The Chairperson of the Summerfield Township Planning Commission does not have the authority to change, modify or add to the procedures for an application for site plan review without obtaining prior approval of the Summerfield Township Board.

95.     The Summerfield Township building inspector Jack Lange does not have the authority to change, modify or add to the procedures for an application for site plan review without prior approval of the Summerfield Township Board.

96.     The Summerfield Township enforcement officer Michael Mihalec does not have the authority to change, modify or add to the procedures for an application for site plan review without prior approval of the Summerfield Township Board.

97.     The Summerfield Township attorney Conly K. Crossley does not have the authority to change, modify or add to the procedures for an application for site plan review without prior approval of the Summerfield Township Board.

98.     On May 15, 2009, Garst submitted to Summerfield Township a request under the Michigan Freedom Of Information Act ("FOIA"), MCL 15.231 *et seq*., in which he requested:  (1) a copy of all minutes of the April 29, 2009

meeting; (2) the names of the individuals, including the members of the

Summerfield Township Board, who attended the April 29, 2009 meeting; (3) a

copy of the posted notice of the special meeting on April 29, 2009; and (4) a copy

of all correspondence between the township attorney(s) and Summerfield

Township regarding the April 29, 2009 special meeting (a copy of Garst's FOIA

request is attached hereto as Exhibit 19).

99.   On May 20, 2009, Garst received a letter from Summerfield

Township attorney Crossley, stating that the Summerfield Township was

unable to grant his FOIA request because:

> [t]he April 29, 2009 meeting of the Township
> Supervisor, Building Inspector, Planning Chairperson,
> Ordinance Enforcer and Attorney to discuss
> numerous pending issues does not meet the definition
> of either a "public body" or "meeting" as set forth in
> MCLA 16.262.  The minutes, transcripts, notes,
> posting you have requested do not exist.  Pursuant to
> MCLA 15.233 the Act does not require a public body
> to make a compilation, summary or report of
> information, or to create a new public record.

(a copy of Crossley's May 20, 2009 to Garst is attached hereto as Exhibit

20).

100.   Defendants have continued in their animus and ill-will against

plaintiffs and have continued to deprive plaintiffs of their constitutional rights to

procedural and substantive due process and to equal protection under the law,

as guaranteed by the Fourteenth Amendment to the United States Constitution,

and have continued in their adverse actions against plaintiffs in retaliation for

plaintiffs' exercise of their First Amendment rights to petition the government and

to bring grievances for redress by the courts.

101.    Defendants' wrongful refusal to process plaintiffs' application for site plan review have denied plaintiffs any economically viable use of the property.

102.    The incidents set forth in the preceding paragraphs are sadly just a few examples of the pattern of unlawful harassment, unconstitutional activity and wrongful conspiracy which all defendants have directed against plaintiffs.

103.    The actions of defendants, which continue to this day, have violated and continue to violate plaintiffs' rights to procedural due process, substantive due process and equal protection under the laws, constitute an unlawful prior restraint of speech and unlawful retaliation for plaintiffs' exercise of their First Amendment rights, including the right to petition the government and the courts, were unlawfully harassing and coercive, and constitute an unconstitutional and unlawful taking of plaintiffs' property.

104.    Defendants have conspired together to take unlawful and unconstitutional action against plaintiffs.

105.    Plaintiffs have fundamental property interests in the Property, and their right to engage in agricultural activities is a fundamental liberty interest.

106.    The policy to unlawfully harass and conspire against plaintiffs and engage in unlawful activity denying plaintiffs their fundamental and constitutional rights has been directed by defendants and their representatives, and has injured plaintiffs in their business and property.

107.   Defendants' activities in unlawfully harassing and conspiring against plaintiffs have had the effect of destroying plaintiffs' goodwill, personally and professionally.

108.    Defendants have taken these wrongful and unconstitutional actions against plaintiffs to punish plaintiffs in retaliation for plaintiffs' insistence on exercising their constitutional rights and petitioning the government during the public participation portions of Summerfield Township Board and for bringing grievances before the Summerfield Township Board.

109.   Defendants' harassing and conspiratorial activities are municipal actions and are inherently arbitrary, and a deliberate misuse of governmental power.

## COUNT I

### Claims Under 42 U.S.C. §1983

110.   The allegations set forth in paragraphs 1 through 109 are incorporated herein by reference.

111.   Defendants, through their actions, deprived plaintiffs of federally protected rights, privileges and immunities provided by federal law and the United States Constitution, and plaintiffs are thereby entitled to redress and damages for defendants' violation of plaintiffs' constitutional rights under 42 U.S.C. §1983.

112.   Defendants are each liable, because each acted in violation of plaintiffs' constitutional rights, took no action to remedy the violation of plaintiffs' constitutional rights, and instead engaged in further constitutionally-violative acts

after they should have become aware of the unconstitutionality and unlawfulness of their actions.

113.    The policies and actions of defendants were based on considerations other than those proper to the good-faith administration of justice, and lay far outside the scope of legitimate law enforcement or prosecutorial discretion.

114.    Defendants' actions constituted a deliberate denial, under color of law, of plaintiffs' federal procedural and substantive due process rights guaranteed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, for which plaintiffs seek redress under 42 U.S.C. §1983.

115.    Defendants' actions constituted a deliberate denial, under color of law, of plaintiffs' federal rights guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, for which plaintiffs seek redress under 42 U.S.C. §1983.

116.    Defendants' actions constituted a deliberate taking, under color of law, in violation of plaintiffs' federal rights guaranteed under the United States Constitution, for which plaintiffs seek redress under 42 U.S.C. §1983.

117.    Defendants' actions constituted deliberate retaliation, under color of law, against plaintiffs because of plaintiffs' exercise of their federal rights as guaranteed under the First Amendment to the United States Constitution, for which plaintiffs seek redress under 42 U.S.C. §1983.

118.    As a direct and proximate result of defendants' actions, plaintiffs have suffered and will continue to suffer injury, including irreparable harm.

119.    Because of the nature of defendants' actions, plaintiffs do not have a complete and adequate remedy at law, and injunctive relief is required.

120.    Because defendants acted with an improper motive and intent, in an arbitrary and discriminatory manner, and their actions show reckless disregard and callous indifference for plaintiffs' federally protected rights, plaintiffs are entitled to exemplary damages as well as all other damages incurred, including costs and attorneys fees pursuant to 42 U.S.C. §1988.

WHEREFORE, plaintiffs respectfully request that this Honorable Court enter an order granting the relief requested in the Request for Relief below, and enter a judgment in an amount to be determined by this Court and a jury, plus costs, interest and attorneys' fees.

## COUNT II

### Violation of 42 U.S.C. §1985(3)

121.    The allegations set forth in paragraphs 1 through 120 are incorporated herein by reference.

122.    Defendants acted with common purpose and agreement each with the others to deprive plaintiffs of their federal rights guaranteed under the United States Constitution and its Amendments, particularly the First Amendment and the Due Process and Equal Protection clauses of the Fourteenth Amendment..

123.    As set forth in the preceding paragraphs of factual allegations, the actions of defendants of which plaintiffs complain in this suit contain acts committed in furtherance of the object of said conspiracy.

124.    Defendants' actions were done in violation of plaintiffs' constitutional rights, for which plaintiffs seek redress under 42 U.S.C. §1985.

125.    As a direct and proximate result of defendants' actions, plaintiffs have suffered and will continue to suffer injury, including irreparable harm.

126.    Because of the nature of defendants' actions, plaintiffs do not have a complete and adequate remedy at law, and injunctive relief is required.

WHEREFORE, plaintiffs respectfully request that this Honorable Court enter an order granting the relief requested in the Request for Relief below, and enter a judgment in an amount to be determined by this Court and a jury, plus costs, interest and attorneys' fees.

## COUNT III

### Violation of 42 U.S.C. §1986

127.    The allegations set forth in paragraphs 1 through 126 are incorporated herein by reference.

128.    Defendants had knowledge of the wrongful acts conspired to be done, mentioned in the preceding paragraphs, and were in a position to prevent the commission of said acts, but neglected and/or refused to prevent or aid in the prevention of the above mentioned acts.

129.    Defendants' neglect and/or refusal to prevent or aid in the prevention of the above mentioned acts constituted violation of 42 U.S.C. §1986.

130.    As a direct and proximate result of defendants' actions, plaintiffs have suffered and will continue to suffer injury, including irreparable harm.

131.    Because of the nature of defendants' actions, plaintiffs do not have a complete and adequate remedy at law, and injunctive relief is required.

WHEREFORE, plaintiffs respectfully request that this Honorable Court enter an order granting the relief requested in the Request for Relief below, and enter a judgment in an amount to be determined by this Court and a jury, plus costs, interest and attorneys' fees.

## COUNT IV

### Superintending Control

132.    The allegations set forth in paragraphs 1 through 131 are incorporated herein by reference.

133.    Defendants had a clear legal duty to process plaintiffs' application for site plan review.

134.    Defendants breached this clear legal duty by failing and/or refusing to process plaintiffs' application for site plan review

135.    Plaintiffs have suffered damages as a result of defendants' refusal to carry out their ministerial duties and fulfill their clear legal duty to process plaintiffs' application for site plan review.

136.    Plaintiffs are thereby entitled to an order of superintending control, compelling defendants to process plaintiffs' pending application for site plan review in accordance with the procedures in place as of June 29, 2006.

WHEREFORE, plaintiffs respectfully request that this Honorable Court enter an order of superintending control, compelling defendants to process plaintiffs' application for site plan review under the guidelines in place on June 29, 2006, as well as the relief requested in the Request for Relief below, and enter a judgment in an amount to be determined by this Court and a jury, plus costs, interest and attorneys' fees.

## COUNT V

**Violation of Michigan Freedom of Information Act
MCL 15.231 *et seq*.**

137.    The allegations set forth in paragraphs 1 through 136 are incorporated herein by reference.

138.    Plaintiffs submitted a request for information to defendants regarding the April 29, 2009 meeting, pursuant to the Michigan Freedom of Information Act, MCL 15.231 *et seq*.

139.    Under the provisions of the Michigan Freedom of Information Act, plaintiffs were entitled to any and all records relating to the April 29, 2009 meeting.

140.    Defendants wrongfully and unjustifiably refused to produce the records which plaintiffs requested pursuant to the Michigan Freedom of Information Act.

141.    Plaintiffs have been forced by defendants wrongfully to expend sums to obtain the records which defendants should have produced to plaintiffs pursuant to the Michigan Freedom of Information Act.

142.    Plaintiffs have been damaged by defendants' wrongful actions in refusing to produce and disclose the records which plaintiffs requested pursuant to the Michigan Freedom of Information Act.

WHEREFORE, plaintiffs respectfully request that this Honorable Court enter an order compelling defendants to produce the records which plaintiffs requested pursuant to the Michigan Freedom of Information Act, as well as the relief requested in the Request for Relief below, and enter a judgment in an amount to be determined by this Court and a jury, plus costs, interest and attorneys' fees.

## COUNT VI

### Violation of Michigan Open Meetings Act
### MCL 15.261 *et seq.*

143.    The allegations set forth in paragraphs 1 through 142 are incorporated herein by reference.

144.    Defendants, by meeting in secret on April 29, 2009 and taking action in accordance with decisions made at that meeting, without posting any notice of a special meeting, or keeping minutes of the meeting, or voting in public to go into closed session pursuant to the provisions of the Michigan Open Meetings Act, MCL 15.261 *et seq.*, among other others, violated the Michigan Open Meetings Act.

145.    Plaintiffs have standing to bring this action against defendants pursuant to MCL 15.271.

146.    Plaintiffs have been damaged by defendants' violation of the Michigan Open Meetings Act.

147.    Because of defendants' violations of the Michigan Open Meetings Act, plaintiffs seek injunctive relief and damages, pursuant to MCL 15.273.

WHEREFORE, plaintiffs respectfully request that this Honorable Court enter an order finding defendants in violation of the Michigan Open Meetings Act, as well as the relief requested in the Request for Relief below, and enter a judgment in an amount to be determined by this Court and a jury, plus costs, interest and attorneys' fees.

### COUNT VII

**Violation of Michigan Right To Farm Act**
**MCL 286.741 *et seq*.**

148.    The allegations set forth in paragraphs 1 through 147 are incorporated herein by reference.

150.    Under the Michigan Right to Farm Act, MCL 286.471 *et seq*., a municipality cannot enact, maintain or enforce an ordinance, regulation or resolution which conflicts with the Act in any manner.

151.    Under the Michigan Right to Farm Act, a municipality cannot restrict or impose additional conditions on a farm's or farm operation's agricultural activities.

152.    Defendants, through the Summerfield Township Zoning Ordinance, have improperly attempted to regulate a farm's or farm operation's agricultural activities.

153.    Defendants have used the Summerfield Township Zoning Ordinance to prevent plaintiffs from engaging in agricultural activities, in violation of the Michigan Right to Farm Act.

154.   As a direct and proximate result of defendants' actions, plaintiffs have suffered and will continue to suffer injury, including irreparable harm.

155.   Because of the nature of defendants' actions, plaintiffs do not have a complete and adequate remedy at law, and injunctive relief is required.

WHEREFORE, plaintiffs respectfully request that this Honorable Court enter an order granting the relief requested in the Request for Relief below, and enter a judgment in an amount to be determined by this Court and a jury, plus costs, interest and attorneys' fees.

## COUNT VIII

### Defamation

156.   The allegations set forth in paragraphs 1 through 155 are incorporated herein by reference.

157.   Defendants have each made statements about plaintiffs orally and in writing to third parties which are false and defamatory, as set forth in detail in the preceding paragraphs of factual allegations and which are incorporated herein as if fully re-alleged under this Count.

158.   Defendants knew that the statements which they have made were false, and have done so specifically to hold plaintiffs up to public scorn, ridicule and embarrassment, both personally and professionally.

159.   Defendants knowingly, willfully and without privilege to do so did publish the foregoing statements to third parties.

160.   Defendants were both negligently and knowingly at fault in the publication of these false and defamatory statements.

161.   Defendants' oral and written statements concerning plaintiffs and their business constitute actionable libel and slander/defamation *per se*.

162.   Defendants' oral and written statements have caused plaintiffs to suffer injury, including but not limited to, interfering with its relationships with third parties.

WHEREFORE, plaintiffs respectfully request that this Honorable Court enter an order granting the relief requested in the Request for Relief below, and enter a judgment in an amount to be determined by this Court and a jury, plus costs, interest and attorneys' fees.

## **REQUEST FOR RELIEF**

Plaintiffs respectfully request that this Honorable Court enter a judgment in an amount to be determined by this Court and a jury, plus costs, interest, exemplary damages, and attorneys' fees, and that this Honorable Court enter an order that:

A.   Preliminarily and permanently enjoins defendants, and their agents, successors, representatives, assigns or any other person or entity acting for or on their behalf, from taking plaintiffs' property unconstitutionally, from violating plaintiffs' rights to procedural and substantive due process, from denying plaintiffs equal protection under the laws and from retaliating against plaintiffs for their petitioning the government and/or seeking redress from courts for their grievances;

B.   Preliminarily and permanently enjoins defendants, and their agents, successors, representatives, assigns or any other person or entity acting for or

on their behalf, from violating plaintiffs' rights under the United States
Constitution and its Amendments, including First and Fourteenth Amendments;

     C.     Preliminarily and permanently enjoins defendants, and their agents,
successors, representatives, assigns or any other person or entity acting for or
on their behalf, from conspiring to violate plaintiffs' rights;

     D.     Preliminary and permanently enjoins defendants, and their agents,
successors, representatives, assigns or any other person or entity acting for or
on their behalf, from violating the Michigan Open Meetings Act, MCL 15.261 *et
seq.*;

     E.     Compels defendants to process plaintiffs' pending application for
site plan review for the Property;

     F.     Compels defendants to produce to plaintiffs the records which they
requested pursuant to the Michigan Freedom of Information Act, MCL 15.231 *et
seq.*;

     G.     Awards plaintiffs, pursuant to 42 U.S.C. §1988, their costs, attorney
fees, interest, lost profits, and all other actual, compensatory, incidental,
consequential, and exemplary damages as against all defendants, jointly and
severally;

     H.     Awards plaintiffs, pursuant to the Michigan Freedom of Information
Act and Michigan Open Meetings Act, their costs and attorneys fees for having to
bring this action;

     I.     Orders defendants to Show Cause why the preliminary injunctive
relief requested herein should not be granted; and

     J.     Awards any other and further relief to plaintiffs as this Court deems just and proper.

 

                    /s/ Cindy Rhodes Victor
                    CINDY RHODES VICTOR (P33613)
                    The Victor Firm, PLLC
                    35801 Mound Road
                    Sterling Heights, Michigan  48310
                    (586) 274-9600
                    cvictor@victorfirm.com

                    Attorneys for Plaintiffs
Dated:  June 29, 2009          FMIO, Inc. and Richard A. Garst

## **DEMAND FOR JURY**

     Plaintiffs FMIO, Inc. and Richard A. Garst, by and through their attorneys, The Victor Firm, PLLC, hereby demand a trial by jury on their causes of action against defendants the Township of Summerfield, Michigan, Kevin R. Iott, in his official and individual capacities, Tammy Bleaska, in her official and individual capacities, Joan Wiederhold, in her official and individual capacities, Dale Wagenknecht, in his official and individual capacities, James V. Seegert, in his official and individual capacities, Amy Reiter, in her official and individual capacities, Richard Koraleski, in his official and individual capacities, David Grude, in his official and individual capacities, Joseph Stranger, in his official and individual capacities, Linda Diesing, in her official and individual capacities, and Michael Strahan, in his official and individual capacities, jointly and severally.

/s/ Cindy Rhodes Victor_____
CINDY RHODES VICTOR (P33613)
The Victor Firm, PLLC
35801 Mound Road
Sterling Heights, Michigan  48310
(586) 274-9600
cvictor@victorfirm.com

Attorneys for Plaintiffs
Dated:  June 29, 2009              FMIO, Inc. and Richard A. Garst