UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FMIO, INC. and
RICHARD A. GARST,

       Plaintiffs,                               Civil Action No. 09-12561

vs.

                                             HON. BERNARD A. FRIEDMAN

TOWNSHIP OF SUMMERFIELD
MICHIGAN, et al.

       Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.    Introduction**

Before the Court is Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. Plaintiff filed a response, and Defendants filed a reply. Pursuant to E.D. Mich. LR 7.1(e)(2), the Court shall decide this motion without oral argument.

Defendants are comprised of Summerfield Township, Kevin R. Lott, Tammy Bleaska, Joan Widerhold, Dale Wagenknecht, James V. Seegert, Amy Reiter, Richard Koraleski, David Grude, Joseph Stanger, Linda Diesing and Michael Strahan, together referred to as "Defendants."

Plaintiff, FMIO, Inc. is a Michigan corporation, and Plaintiff, Richard A. Garst is an employee and agent for FMIO. They are together referred to as "Plaintiff."

Plaintiff filed an eight count complaint alleging that Defendants conspired to violate Plaintiff's rights to free speech, equal protection and due process under federal law, and further raising state claims including defamation and violations of the Michigan Freedom of Information

1

Act, Open Meetings Act and Right to Farm Act.

## II.  Background and Facts

Plaintiff's claims arise from a series of events that span a ten year period. A brief summary follows.

Beginning in late 2000, the Township's Fire Department was investigated for allegedly possessing child pornography. Garst appeared at the Township Board meetings, and demanded that the Board discuss the investigation and the steps being taken to protect children in the community. Because of the ongoing investigation, the Board did not respond to Garst pending resolution of the investigation. Nothing came of the investigation.

In April of 2002, Garst submitted petitions seeking to recall Board Defendants Bleashka and Wiederhold, along with other Township officials who are not defendants in this litigation, but he did not circulate the petitions and did not collect the required signatures for the process to proceed. Garst claims that Detective Alison King, who was the Michigan State Police Detective in charge of the child pornography investigation, asked him to hold off on his recall petition.

In 2000, Garst entered into an agreement to lease farm land from the Township for a three year period ending December 31, 2003. In September of 2003, the Township advertised for sealed bids from anyone wanting to lease the property following the expiration of Garst's lease. Garst was not the successful bidder. Plaintiff states that prior to the advertisement, he received a letter advising him that the Board had decided not to renew the lease because it already had another interested party. However, Plaintiff does not attach the letter. Defendants point out that the 2000 lease agreement does not grant Garst the right of first refusal or an automatic renewal option. In 2008, the same parcel of land was again advertised for lease, and

2

this time Garst was the high bidder and he signed a new lease. The lease was renewed in 2009 and 2010.

On October 28, 2004, former township supervisor, Zelda Lucas, filed a petition for a personal protection order against Garst. The petition included a sworn statement by Defendant Kevin Lott that he had witnessed Garst threaten Lucas and her family. Garst did not take any legal action regarding the issuance of the personal protection order.

In May 2006, the Township voted to increase the application fee for site plan review from $300 to $2,000, effective July 1, 2006. Garst claims that he submitted a site plan application on June 29, 2006 by delivering it to the Township Hall, and leaving it on the front table. Garst claims that he was let into the Hall by Martin Wiederhold, but Wiederhold denies seeing Garst bring any documents with him or leave any documents in the building. In November 2006, Garst paid the $300 site plan review fee to the Township. Defendants state that to date, the Township has not received an application for review.

On September 15, 2008, the Board adopted a Dangerous Buildings Ordinance. Section IV(D) of the Dangerous Buildings Ordinance requires that a copy of the notice be "posted upon a conspicuous part of the building or structure" at least ten days before the hearing date. On April 4, 2009, the Township's ordinance enforcement officer, Michael Mihalec, sent a letter to Garst advising that pursuant to the Township's Dangerous Buildings Ordinance, an inspection and hearing would be held on April 22, 2009 regarding a structure on FMIO's property. There had not been a filing of a written complaint or a posted notice. Garst requested that he be placed on the agenda of the April 20, 2009 board meeting. During the meeting, Garst addressed the Board regarding the Dangerous Building violation. Rather than respond to him immediately, the

3

Township's attorney advised Garst that the matter would be addressed at the hearing scheduled for April 22, 2009. On April 22, 2009, township officials met for the dangerous building hearing. However, it was discovered that the posting requirement of the ordinance had not been met, and the hearing was adjourned without action by the Township.

On May 15, 2009, pursuant to the Michigan Freedom of Information Act, M.C.L. 15.231, *et seq.* ("FOIA") and the Michigan Open Meetings Act, MCL 15.261 ("OMA"), Garst requested documents from the Township pertaining to a meeting of Township officials and the Township's attorney, Conly Crossley, that occurred on April 29, 2009. On May 20, 2009, Crossley responded to the request, and advised Garst that no requested documents existed, because the April 29, 2009 meeting was an informal gathering and not subject to the OMA. She explained it was not subject to the OMA because no quorum of any public body was present. Garst was advised of his right to appeal the response, which he did not do.

## III. Summary Judgment Standard

Summary judgment is proper where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. In considering a motion for summary judgment, the Court will construe all facts in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). There are no genuine issues of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id. If the movant carries its burden of showing an absence of evidence to support a claim, then the nonmovant must demonstrate by affidavits, depositions, answers to interrogatories, and admissions that a genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986).

## IV. Analysis

### A. Absolute Immunity of Board Members

Defendants' first argument is that local legislators, such as the Township Board defendants, are entitled to absolute immunity for all actions taken "in the sphere of legitimate legislative activity." Tenney v. Brandhove, 341 U.S. 367, 376 (1951). As the Supreme Court has explained,

> The claim of an unworthy purpose does not destroy the privilege. Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives. The holding of this Court in *Fletcher v. Peck*, 6 Cranch 87, 130, 3 L.Ed. 162, that it was not consonant with our scheme of government for a court to inquire into the motives of legislators, has remained unquestioned. See cases cited in *State of Arizona v. State of California*, 283 U.S. 423, 455.

Id. at 377.

In determining whether immunity applies, the Supreme Court has held that neither motive nor intent is relevant to the court's analysis, explaining, "whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Bogan v. Scott-Harris, 523 U.S. 44, 54 (1988).

Plaintiff argues that the Board defendants' actions were not solely legislative, but rather that the Board defendants also served an administrative function, for which they are not entitled to immunity. Plaintiff points out that the *Bogan* Court provided a two-step analysis to determine whether an individual defendant's acts fall within the sphere of legitimate legislative activity.

5

First, a court must consider whether a defendant's actions were legislative in form or "integral steps in the legislative process," and second, a court must inquire whether a defendant's actions were legislative in substance- whether the actions at issue "bore all the hallmarks of traditional legislation." Bogan, 523 U.S. at 55.

Plaintiff argues that the Board members repeatedly stopped him from speaking at meetings and took other non-legislative actions in retaliation for his exercise of his right to petition and criticize them, including obtaining a PPO against him and deciding to increase the fee for site plan review.

Plaintiff's arguments are unpersuasive. Plaintiff and Defendants both identify multiple board meetings at which Plaintiff made numerous comments. In addition, a legislative body has the authority to establish the rules of conduct for its own meetings. Shields v. Charter Twp. of Comstock, 617 F.Supp.2d 606, 613 (W.D.Mich. 2009)("A governmental body has significant discretion to regulate its own meetings in the manner it sees fit. . . Accordingly, a public body does not violate the First Amendment when it limits speech to a certain topic or time period in a public meeting.") Defendants' decision to regulate the Board meetings was not unconstitutional.

Further, the PPO was obtained only through court order, and was obtained by former supervisor Zelda Lucas, and not by any Board members. Finally, the Court believes that the decision to increase the fee for site plan review is a legislative act, and Plaintiff has failed to demonstrate otherwise. Regardless, though, Defendants permitted Plaintiff to pay the lower fee, so such issue is not relevant to Plaintiff's complaints. Accordingly, the Court finds that the Board members are entitled to immunity for the claims made against them.

**B.    Zoning Board of Appeals Defendants**

Defendants next argue that the inclusion of the Zoning Board of Appeals ("ZBA") Defendants in this litigation is improper, as none of Plaintiff's allegations address any action taken by the Township's ZBA or its member defendants. Defendants point out that the ZBA has no authority vis-a-vis the claims in Plaintiff's complaint. The ZBA does not have authority to approve site plan review applications or issue building permits, and there are no allegations in Plaintiff's complaint which include the ZBA. Plaintiff does not dispute this argument in its response brief. The Court's review of Plaintiff's complaint finds Defendants' arguments warranted, and claims against the ZBA Defendants are dismissed.

### C.     Planning Commission Defendants

Defendants next argue that the Planning Commission Defendants are entitled to qualified immunity.

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Walsh v. Cuyahoga County, 424 F.3d 510, 513 (6th Cir.2005). "[Q]ualified immunity is an immunity from suit, not just from an ultimate assessment of damages." Archie v. Lanier, 95 F.3d 438, 440 (6th Cir.1996). This immunity shields officials "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Myers v. Potter, 422 F.3d 347, 352 (6th Cir.2005).

As the Sixth Circuit has explained,

> In evaluating a qualified immunity defense, this court engages in a two-part analysis. We first determine whether, on the facts alleged, the official violated a constitutional or statutory right. We view the facts alleged in the light most favorable to the party seeking to defeat immunity. If the plaintiff does not

> establish the violation of a constitutional or statutory right, the inquiry ends there and the official is entitled to immunity.

Perez v. Oakland County, 466 F.3d 416, 426-427 (6th Cir. 2006).

Defendants claim that at worst, they failed to process Plaintiff's site plan review application, which can not possibly constitute a constitutional or statutory right. Defendants maintain that they never received the application, and that Plaintiff has not established any facts demonstrating that Defendants did anything that was unreasonable in the performance of their duties.

In response, Plaintiff argues that it was singled out for selective enforcement and disparate treatment as a result of his exercise of his First Amendment rights at board meetings. However, the fact remains that Plaintiff has failed to demonstrate that Defendants ever actually received the site plan application at issue. Without establishing this fundamental fact, it is impossible to demonstrate that Defendants wilfully refused to process such application, and so violated Plaintiff's constitutional rights. While Plaintiff states that the site plan application is attached to Plaintiff's pleadings, such attachment is after the fact, and does not substantiate Plaintiff's claims. Plaintiff's claims against the Planning Commission defendants are dismissed.

### D. Constitutional Claims

Counts I, II and III of the complaint raise claims under 42 U.S.C. §§ 1983, 1985 and 1986. To prevail on a Section 1983 claim, Plaintiff must prove (1) a deprivation of a right secured by the Constitution or laws of the United States, (2) caused by a person acting under color of state law, (3) occurring without due process of law. O'Brien v. City of Grand Rapids, 23 F.3d 889, 995 (6th Cir. 1994). Section 1985 establishes a cause of action for conspiracy to violate constitutional rights.

Plaintiff contends that Defendants denied Plaintiff its substantive due process rights when they subjected it to arbitrary and capricious actions, including its decision to adopt an increase in the site plan review fee. Plaintiff repeats its previous argument that Defendants only adopted an increase in the fee because they knew Plaintiff was about to submit its site plan review application, and they wanted to act against Plaintiff for exercising its First Amendment rights.

To succeed on a substantive due process claim, the burden is on Plaintiff to prove that Defendants acted arbitrarily or capriciously. Curto v. City of Harper Woods, 954 F.2d 1237 (6th Cir. 1992).

> "To state a substantive due process claim in the context of zoning regulations, a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action.". . . A court should "not interfere with local zoning decisions unless the locality's action 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare.' " But where a substantive due process violation exists, no amount of just compensation can authorize the action." (Internal citations omitted).

Braun v. Ann Arbor Charter Twp., 519 F.3d 564, 573-574 (6th Cir. 2008). The Court does not find that it arbitrary or capricious for the Township to adopt or increase a fee for site plan review. While Plaintiff contends that the fee increase occurred only in retaliation against Plaintiff for exercising its First Amendment rights, Plaintiff has failed to provide any support for this argument, other than bare allegations. Such argument is insufficient to proceed on Plaintiff's claim. Further, Defendants agreed to allow Plaintiff to file its site plan review application under the original fee, rather than the increased fee, which is contrary to Plaintiff's arbitrary and capricious actions arguments.

Plaintiff further argues that Defendants denied it its procedural due process rights. The

9

basic elements of procedural due process are notice and an opportunity to be heard. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950). Plaintiff has failed to demonstrate that he was not given notice in connection with all of his dealings with the township. He received notice with regards to the farm lease, his rights to appeal the FOIA request, and the dangerous building violation. While the Township failed to comply with its own notice requirements regarding the dangerous building ordinance, it immediately acted to correct the situation by adjourning the dangerous building hearing and not taking action against Plaintiff. Plaintiff has failed to demonstrate a procedural due process claim.

Plaintiff further alleges that he has been denied equal protection under the law. However, Plaintiff does not identify a single instance of being treated differently from similarly situated persons. In response, Plaintiff argues that certain ordinances were selectively enforced against Plaintiff. However, Plaintiff has not demonstrated how he was treated differently from others, or that others have not been required to pay the increased site plan approval fee. Plaintiff has failed to make a prima face case of disparate treatment by failing to identify even one person who has been treated differently.

Plaintiff's First Amendment claim is likewise without merit. In order to sustain a claim based upon an alleged deprivation of a right protected by federal law, Plaintiff must please factual allegations sufficient to establish that:

> (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.

Fritz v. Charter Twp. of Comstock, 592 F.3d 718 (6th Cir. 2010).

Here, while freedom of speech is a constitutionally protected right, Plaintiff has failed to

demonstrate that an adverse action was taken that would deter a person of ordinary firmness from expressing his free speech rights, or that an adverse action was in any manner motivated by Plaintiff's protected conduct. Plaintiff's First Amendment rights do not give him the right to require the Township to place him on the Township agenda whenever he demands. As discussed *supra*, Plaintiff has not demonstrated genuine adverse actions against him, and certainly has not demonstrated that such actions would deter a reasonable person from exercising his constitutionally protected rights. Plaintiff's first amendment arguments do not survive summary judgment.

Plaintiff's superintending control claim is likewise dismissed. Plaintiff states in its response brief that it seeks not a writ of superintending control, bur rather injunctive relief to redress the deprivation of Plaintiff's constitutional rights. As Plaintiff has not demonstrated any such deprivation, Plaintiff's injunctive relief claim is improper.

### E. Open Meetings Act and FOIA Claims

Plaintiff contends that Defendants have violated the FOIA by failing providing false information in response to Plaintiff's FOIA request. Plaintiff requested information with regard to an April 29, 2009 meeting. Plaintiff claims that the Township violated the OMA by holding a "secret meeting"on April 29, 2009. In response, Defendants point M.C.L. 15.262(b), which states that unless a quorum of the board is present, there is not a "meeting," within the definition of the OMA. Defendants state, and Plaintiff has not refuted, that there was not a quorum of the Township Board or the Planning Commission present on April 29, 2009. Defendants further state that a "meeting" did not take place, and no violation of the OMA occurred. Since there was not a quorum of a public body present, no notice or minutes were required, contrary to Plaintiff's

assertions. As no minutes were required, Defendants did not violate FOIA by stating that it did not have any documents that were responsive to Plaintiff's request. Plaintiff's OMA and FOIA claims may not proceed.

### F. Right to Farm Act

Plaintiff further claims violation of the Michigan Right to Farm Act. The Michigan Right to Farm Act, M.C.L. 286.471, *et seq*., provides that, under most conditions, a farm may not be found to be a nuisance. Plaintiff has not demonstrated any manner in which Defendants interfered with its exercise of its rights under this Act. Plaintiff contends that it submitted its site plan for the construction of a fruit stand for review "in case the Township took the position that plaintiffs could not proceed with the new produce stand because they needed a building permit." However, Plaintiff has not demonstrated that Defendants actually *did* require a building permit, and accordingly, Plaintiff has not demonstrated that Defendants actually interfered with Plaintiff's right to farm. Further, Plaintiff argues that Defendants interfered with its right to farm through its attempt to have the existing building on the property torn down under the Dangerous Buildings Ordinance. However, as explained, *supra*, Defendants never followed through with such attempt and, accordingly, Plaintiff's farming activities were not interfered with. Plaintiff has failed to demonstrate any violation of the Michigan Right to Farm Act, and this claim is dismissed.

### G. Defamation

Finally, Plaintiff has brought a defamation claim, arguing that his reputation has been harmed through the Township's actions. The Michigan Supreme Court has set forth the elements of a defamation claim as follows:

> The elements of a defamation claim are: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement of irrespective of the special harm or the existence of special harm caused by publication.

Mitan v. Campbell, 474 Mich. 21, 24 (2005).

Plaintiff contends that Defendants made defamatory statements about Plaintiff which tended to harm it by lowering its reputation within the community. However, at his deposition, Plaintiff was unable to identify any false or defamatory statements made by Township officials. In addition, he was unable to identify any person who has not done business with him as a result of any allegedly defamatory statements. Accordingly, as Plaintiff can not prove the elements of defamation, this claim is dismissed.

## V.   Order

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED.

|  |  |
|---|---|
| Dated: December 17, 2010<br>Detroit, Michigan | S/Bernard A. Friedman_____<br>BERNARD A. FRIEDMAN<br>UNITED STATES DISTRICT JUDGE |