## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**FMIO, INC., a Michigan corporation
and RICHARD A. GARST,**

    **Plaintiffs,**      **Case No. 2:09-cv-12561**

  **v.**            **HONORABLE BERNARD A. FRIEDMAN**

**TOWNSHIP OF SUMMERFIELD,**  **HONORABLE MONA K. MAZJOUB,**
**MICHIGAN, a Michigan municipal**  **MAGISTRATE JUDGE**
**corporation, KEVIN R. IOTT in his official
and individual capacities, TAMMY
BLEASKA, in her official and individual
capacities, JOAN WIEDERHOLD, in her
official and individual capacities, DALE
WAGENKNECHT, in his official and
individual capacities, JAMES V. SEEGERT,
in his official and individual capacities,
AMY REITER, in her official and individual
capacities, RICHARD KORALESKI, in his
official and individual capacities, DAVID
GRUDE, in his official and individual
capacities, JOSEPH STRANGER, in his
official and individual capacities, LINDA
DIESING, in her official and individual
capacities, and MICHAEL STRAHAN, in
his official and individual capacities,
jointly and severally,**

    **Defendants.**

_____

### PLAINTIFFS' MOTION FOR RECONSIDERATION
### OF THIS COURT'S ORDER GRANTING
### <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Plaintiffs FMIO, Inc. and Richard Garst, through their counsel, The Victor Firm, PLLC, hereby respectfully request that this Court reconsider its December 17, 2010 Order granting defendants' motion for summary judgment, and in support of their motion, state as follows:

1.     Plaintiffs FMIO, Inc. and Richard Garst have brought this lawsuit under 29 U.S.C. §1983 for denial of their rights to due process and equal protection, and for state law claims of defamation, violation of the Freedom of Information Act, violation of the Open Meetings Act, and violation of the Michigan Right To Farm Act.

2.     Defendants moved this Court for summary judgment on various grounds, including the argument that the individual defendants had absolute or qualified immunity.

3.     Defendants also sought summary judgment as to the constitutional claims, asserting that none of the defendants had violated plaintiffs' rights to due process, equal protection or plaintiff Richard Garst's First Amendment rights.

4.     Defendants further sought summary judgment as to plaintiffs' state law claims, asserting that there was no violation of the Open Meetings Act or the Michigan Freedom of Information Act or the Michigan Right To Farm Act, and that defendants did not defame plaintiffs.

5.     This Court issued its Order on December 17, 2010, granting defendants' motion for summary judgment in its entirety.

6.     Plaintiffs submit that the evidence in the record demonstrates that plaintiffs have, at the very least, established a genuine issue of material fact

sufficient to survive a motion for summary judgment, and that this Court's December 17, 2010 Order appears not to have considered certain evidence plaintiffs proffered in their brief in opposition to defendants' motion for summary judgment.

7.     Plaintiffs therefore respectfully request that this Court reconsider its ruling of December 17, 2010, in light of the evidence which has already been submitted into the record, and that this Court set aside the summary judgment in favor of defendants and set this case for a trial on plaintiffs' claims.

WHEREFORE, plaintiffs FMIO, Inc. and Richard Garst respectfully request that this Court reconsider its December 17, 2010 Order, and set aside the grant of summary judgment in favor of defendants, and allow this matter to proceed to trial.

/s/  Cindy Rhodes Victor
CINDY RHODES VICTOR (P33613)
The Victor Firm, PLLC
Suite 327
3250 West Big Beaver Road
Troy, Michigan  48084
(248) 792-9320
cvictor@victorfirm.com

Attorneys for Plaintiffs

Dated:  January 3, 2011

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

**FMIO, INC., a Michigan corporation
and RICHARD A. GARST,**

                **Plaintiffs,**              **Case No. 2:09-cv-12561**

      **v.**                      **HONORABLE BERNARD A. FRIEDMAN**

**TOWNSHIP OF SUMMERFIELD,**      **HONORABLE MONA K. MAZJOUB,**
**MICHIGAN, a Michigan municipal**      **MAGISTRATE JUDGE**
**corporation, KEVIN R. IOTT in his official
and individual capacities, TAMMY
BLEASKA, in her official and individual
capacities, JOAN WIEDERHOLD, in her
official and individual capacities, DALE
WAGENKNECHT, in his official and
individual capacities, JAMES V. SEEGERT,
in his official and individual capacities,
AMY REITER, in her official and individual
capacities, RICHARD KORALESKI, in his
official and individual capacities, DAVID
GRUDE, in his official and individual
capacities, JOSEPH STRANGER, in his
official and individual capacities, LINDA
DIESING, in her official and individual
capacities, and MICHAEL STRAHAN, in
his official and individual capacities,
jointly and severally,**

                **Defendants.**

_____

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR
## RECONSIDERATION OF THIS COURT'S ORDER
## <u>GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

## **TABLE OF CONTENTS**

CONTROLLING OR MOST APPROPRIATE AUTHORITY                    ii

CONCISE STATEMENT OF THE ISSUE PRESENTED                    iii

STATEMENT OF MATERIAL FACTS                    1

STANDARD OF REVIEW                    7

DISCUSSION                    8

    I.    *THE EVIDENCE IN THE RECORD DEMONSTRATES THAT THERE EXIST GENUINE ISSUES OF MATERIAL FACT AS TO PLAINTIFFS' FIRST AMENDMENT CLAIMS*    8

    II.    *THE EVIDENCE IN THE RECORD DEMONSTRATES THAT THERE EXIST GENUINE ISSUES OF MATERIAL FACT AS TO PLAINTIFFS' EQUAL PROTECTION CLAIMS*    12

    III.    *THE EVIDENCE IN THE RECORD DEMONSTRATES THAT THERE EXIST GENUINE ISSUES OF MATERIAL FACT AS TO PLAINTIFFS' PROCEDURAL AND SUBSTANTIVE DUE PROCESS CLAIMS*    16

    IV.    *THE EVIDENCE IN THE RECORD DEMONSTRATES THAT THERE EXIST GENUINE ISSUES OF MATERIAL FACT AS TO PLAINTIFFS' FREEDOM OF INFORMATION ACT AND OPEN MEETINGS ACT CLAIMS*    18

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

### <u>Case Citations</u>

*Basinger v. CSX Transp., Inc.*, 91 F.3d 143 (6th Cir. 1996), *cert den*, 519 U.S. 1111 (1997)

*Booth Newspapers, Inc. v. Univ. of Mich. Bd. of Regents*, 444 Mich. 211, 507 N.W.2d 422 (1993)

*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718 (6th Cir. 2010)

*Futernick v. Sumpter Twp.*, 78 F.3d 1051 (6th Cir. 1996)

*Hillside Prods., Inc. v. Duchane*, 249 F. Supp. 2d 880 (E.D. Mich. 2003)

*Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119 (6th Cir. 1982)

*Keweenaw Bay Indian Community v. United States*, 940 F. Supp. 1139 (W.D. Mich. 1996), *rev'd on other grounds*, 136 F.3d 469 (6th Cir. 1998)

*Nagle Industries v. Ford*, 175 F.R.D. 251 (E.D. Mich. 1997), *aff'd*, 194 F.3d 1339 (Fed. Cir. 1999)

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)

*Zilich v. Longo*, 34 F.3d 359 (6th Cir. 1994)

### <u>Court Rules</u>

Fed. R. Civ. P. 59(e)

L.R. 7.1(g)(3)

## **CONCISE STATEMENT OF THE ISSUE PRESENTED**

Whether this Court should reconsider its December 17, 2010 Order

granting defendants' motion for summary judgment, and set aside that order and

allow this case to proceed to trial?

## STATEMENT OF MATERIAL FACTS

1.      Plaintiffs FMIO, Inc. and Richard Garst have brought this lawsuit under 29 U.S.C. §1983 for denial of their rights to due process and equal protection, and for state law claims of defamation, violation of the Freedom of Information Act, violation of the Open Meetings Act, and violation of the Michigan Right To Farm Act.

2.      On November 8, 2000, plaintiff Garst attended a public meeting of the Township Board, and during the portion dedicated to the discussion of the Fire Report, he inquired about an alleged child pornography incident which may have occurred at the Summerfield Township Fire Hall ("Fire Hall").  The Township Board advised Garst that "this was not the proper time" to discuss the alleged child pornography incident and refused to discuss the matter (Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ["Opp DMSJ"], Ex. 2; Defendants' Motion for Summary Judgment ["DMSJ"], Ex. A at 39-40).

3.      Additionally, Garst was told that in the future, he should ask to be on the agenda if he wanted to speak at Township Board meetings (*Id*.).

4.      On March 17, 2003, Garst attended a Township Board meeting where he stated that there were certain Township firemen that should not be around children because the Federal Bureau of Investigations ("the FBI") investigation of alleged child pornography incidents occurring at the Fire Hall was still an open investigation (Opp DMSJ, Ex. 4).

5.      When Garst received an approved written copy of the meeting minutes of the March 17, 2003 Township Board meeting, he discovered that the

minutes reflected that he had suggested that Randy LaRocca was one of the individuals under investigation by the FBI (*Id.*).

6.      Garst did not suggest that Randy LaRocca was under investigation by the FBI; instead, Garst said at the March 17, 2003, Township Board meeting that Randy LaRocca was the only person at the Fire Hall he could trust.

7.      From 2000 through 2003, plaintiffs had a lease agreement with the township to farm certain township property.

8.      However, after criticizing township officials for their handling of the child pornography matter, on September 17, 2003, Garst received a letter from the Township informing him that the Township Board had decided not to renew the lease agreement because there was another interested party (DSMJ, Ex. A at 55).

9.      In spite of the representation, on September 25, 2003, the Township Board placed an advertisement in *The Independent* seeking bids for approximately 69 of 77 acres of farm property located on Ida West Road (Opp DMSJ, Ex. 6).

10.      On November 5, 2003, the Township Board sent a letter to Howard Keinath to inform him that he was the highest bidder on the 69 acres of farm property located on Ida West Road (Opp DMSJ, Ex. 7).

11.      Garst offered to match any offer on the property so that plaintiffs would not lose the ability to farm the property, but the Township just simply refused to deal with him (DMSJ, Ex. A at 57).

12.     Instead, on March 2, 2004, the Township and Howard Keinath entered in a lease agreement for 67 acres of farm property located on Ida West Road for the amount of $7,705.00 per year, with the term of the lease being from March 2, 2004 through December 31, 2006 (Opp DMSJ, Ex. 8).

13.     On October 28, 2004, Zelda Lucas, then-Township Supervisor, and defendant Kevin R. Iott, then-candidate for the office of Township Supervisor, served a personal protection order (PPO) on Garst that prevented him from attending the Township Board meetings (DMSJ, Ex. A at 22, 76).

14.     The statement made in the application for the PPO by Supervisor Iott was not sworn, and his statement was contradicted by Supervisor Lucas' statement in support of the PPO.  Garst denied that he ever took any wrongful actions against anyone, and the PPO was dissolved (*Id.* at 22).

15.     Soon afterwards, Township Fire Chief Nick Lucas, Supervisor Lucas' son, wrongfully filed assault charges against Garst.  Garst was acquitted of these false charges on July 12, 2005, after a jury trial (*Id.* at 129-31).

16.     On February 22, 2005, Garst received a letter from Peter Fales, an attorney for David Kottke, who serves as the Township's cemetery sexton, in which Garst was advised that Kottke was upset over a slanderous comment attributed to Garst in the minutes of the August 16, 2004 Township Board meeting (Opp DMSJ, Ex. 10).

17.     Garst responded to Fales' letter on March 15, 2005, and explained that he had not made the slanderous comment, that he asked the Township Board to correct the minutes, and that the issue of incorrect statements being

printed by defendant Clerk Bleaska in the minutes of the Township Board meetings was an on-going issue which has been acknowledged and addressed by the Township Board (Opp DMSJ, Ex. 11).

18.     On June 29, 2006, Garst delivered plaintiffs' site plan review packet for a new produce stand on the subject property to the Township Hall (DMSJ, Ex. A at 80-81).

19.     The site plan review packet contained:  (1) a cover letter; (2) a $300.00 check for the application fee; (3) the application for site plan review; (4) the engineered site plan for the proposed produce stand; (5) a report from George B. Warnke, Jr., Registered Land Surveyor; (6) a description of the proposed new produce stand; and (7) a demolition permit for the old produce stand (Opp DMSJ, Ex. 13).

20.     On November 13, 2006, the Township informed Garst that it did not have the check which FMIO had submitted with its site plan review application packet on June 29, 2006.  FMIO immediately obtained a certified check in the amount of $300.00 to Summerfield Township on that very same day, November 13, 2006, and provided it to the Township (Opp DMSJ, Ex. 14; DMSJ, Ex. A at 88).

21.     Approximately one week later, on or about November 20, 2006, the Township then informed Garst that it could not find plaintiffs' site plan application (DMSJ, Ex. A at 89-91).

22.     On April 4, 2009, Garst received a letter from Michael Mihalec, Township Ordinance Enforcement Officer, advising him that there would be a

dangerous building inspection and hearing at 4019 Sylvania-Petersburg Road, on Wednesday, April 22, 2009 at 10:00 a.m. (Opp DMSJ, Ex. 16).

23.     At the April 20, 2009 Township Board meeting, when Garst asked the Township Board as to the status of the review of plaintiffs' site plan, which had been submitted almost three years earlier, Township Attorney Conly K. Crossley refused to allow Garst to discuss the issue, and told Garst that he could present his evidence of the submittal at the "Dangerous Building Hearing" which was to be held on April 22, 2009 (Opp DMSJ, Ex. 17; DMSJ, Ex. A. at 25).

24.     When Garst was told that he could not discuss the issue that plaintiffs' site plan had been pending without any action for almost three years, he immediately stopped discussing the issue.

25.     However, since he had not used up his allotted time to speak, he brought to the attention of the Township Board that a commercial trucking business and/or terminal was wrongfully being allowed to operate in the Township (Opp DMSJ, Ex. 17).

26.     Garst informed the Township Board that the commercial trucking business and/or terminal was located on property leased by Mark LaRocca, the Township Constable, who was defendant Supervisor Iott's brother-in-law, and that defendant Supervisor Iott, who drove a truck for Mark LaRocca's business, parked the truck which he drove at the illegal commercial trucking business and/or terminal (DMSJ, Ex. A at 25-26).

27.     Township Attorney Crossley again stopped Garst from speaking, and again told him that he could not bring this forward at a public meeting, but

- 5 -

instead, told him that he could only speak at the "Dangerous Building Hearing." Township Attorney Crossley then unilaterally declared that the "public comment" portion of the public meeting was over (Opp DMSJ, Ex. 17).

28.     On April 29, 2009, a meeting was held at the Township Hall to discuss how to resolve the issue of the review of plaintiffs' site plan, on which defendants had failed to take any action for almost three years.  In attendance at this meeting were defendant Supervisor Iott, defendant Planning Commission Chair Reiter, Township Building Inspector Lange, Township Enforcement Officer Mihalec and Township Attorney Crossley (Opp DMSJ, Ex. 18).

29.     On April 30, 2009, defendant Reiter, based on apparent authority from the Township, drafted a letter to Garst which stated that, in an attempt to resolve the issue of the lack of review of plaintiffs' site plan, the Township would require plaintiffs to: (1) reapply for site plan review; (2) pay an application fee of $300; (3) be financially responsible for outside consulting fees; (4) after approval from the Township Planning Commission, obtain a building permit from the Township building inspector; (5) be financially responsible for any fees which the Township building inspector incurred; and (6) tear down the old produce stand within 90 days of receiving a building permit for the new produce stand (*Id*.; DMSJ, Ex. A at 98).

30.     On May 15, 2009, Garst submitted to the Township a request under the Michigan Freedom Of Information Act ("FOIA"), M.C.L. 15.231 *et seq*., in which he requested:  (1) a copy of all minutes of the April 29, 2009 meeting; (2) the names of the individuals, including the members of the Township Board, who

attended the April 29, 2009 meeting; (3) a copy of the posted notice of the

special meeting on April 29, 2009; and (4) a copy of all correspondence between

the Township attorney(s) and the Township regarding the April 29, 2009 special

meeting (Opp DMSJ, Ex. 19).

31.    On May 20, 2009, Garst received a letter from Township Attorney

Crossley (Opp DMSJ, Ex. 20), denying his FOIA request because:

> [t]he April 29, 2009 meeting of the Township Supervisor, Building
> Inspector, Planning Chairperson, Ordinance Enforcer and Attorney
> to discuss numerous pending issues does not meet the definition of
> either a "public body" or "meeting" as set forth in MCLA 16.262.
> The minutes, transcripts, notes, posting you have requested do not
> exist.  Pursuant to MCLA 15.233 the Act does not require a public
> body to make a compilation, summary or report of information, or to
> create a new public record.

## STANDARD OF REVIEW

Plaintiffs bring this motion under Fed. R. Civ. P. 59(e) and L.R. 7.1(g)(3).

Rule 59(e) provides that "any motion to alter or amend a judgment shall be filed

no later than 28 days after entry of the judgment."  The Federal Rules of Civil

Procedure do not provide for a motion for reconsideration.  *Nagle Industries v.

Ford*, 175 F.R.D. 251 (E.D. Mich. 1997), *aff'd*, 194 F.3d 1339 (Fed. Cir. 1999)

(quoting *Basinger v. CSX Transp., Inc.*, 91 F.3d 143 (6th Cir. 1996), *cert den*, 519

U.S. 1111 (1997)).  However, "such motions, if served within 10 [*now 28*] days of

the entry of judgment, are considered motions to alter or amend judgments

pursuant to Fed. R. Civ. P. 59(e)."  *Id*.  L.R. 7.1(g)(3) sets forth the rule in this

District Court for motions for reconsideration, which provides that motions for reconsideration must be filed within 14 days after entry of the judgment or order.[1]

Motions to alter or amend the judgment, brought pursuant to Fed. R. Civ. P. 59(e), "are entrusted to the Court's sound discretion." *Keweenaw Bay Indian Community v. United States*, 940 F. Supp. 1139, 1140 (W.D. Mich. 1996), *rev'd on other grounds*, 136 F.3d 469 (6th Cir. 1998) (citing *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982)). "Rule 59(e) motions are generally granted for three reasons: (1) because of an intervening change in the controlling law; (2) because evidence not previously available has become available; or (3) necessity to correct a clear error of law or prevent manifest injustice." *Keweenaw Bay,* 940 F. Supp. at 1141 (footnote and citation omitted).

## DISCUSSION

Plaintiffs bring this motion for reconsideration to prevent manifest injustice, as it appears from this Court's December 17, 2010 Order that certain important evidence which was attached to plaintiffs' opposition to defendants' motion for summary judgment was not considered by the Court in rendering its decision.

## I.   THE EVIDENCE IN THE RECORD DEMONSTRATES THAT THERE EXIST GENUINE ISSUES OF MATERIAL FACT AS TO PLAINTIFFS' FIRST AMENDMENT CLAIMS

In their brief in opposition to the motion for summary judgment, plaintiffs set forth the controlling case authority and evidence in the record which

---

[1] Pursuant to Fed. R. Civ. P. 6(a)(1)(C), if the last day to act is a legal holiday, the period continues to run until the same time on the next day that is not a Saturday, Sunday, or legal holiday.  According to this District Court's website, December 31, 2010 was a legal holiday, making the instant motion due on January 3, 2011.

demonstrated that there was, at the least, a genuine issue of material fact as to whether defendants had retaliated against plaintiffs for the exercise of their First Amendment rights.  In its opinion, this Court held that plaintiffs failed to demonstrate that there were any adverse actions taken which would deter a person of ordinary firmness from exercising their First Amendment rights, or that an adverse action was taken which was motivated by plaintiffs' protected conduct.  However, this decision appears to not have considered the evidence in the record which plaintiffs put before this Court in their opposition brief.

As the record shows, as far back as 2000, when plaintiff Garst attempted to address the Township Board with his concerns as to an alleged child pornography incident at the township fire hall, defendants attempted to prevent him from speaking about this issue, and demanded that if he wanted to speak at future township board meetings, that he would have to be placed on the agenda (Opp DMSJ, Ex. 2; DMSJ, Ex. A at 39-40).  Thus, while this Court correctly states that the First Amendment does not require the Township to place Garst on the meeting agenda whenever he demands, the Township likewise cannot demand that Garst speak to the Township board only when he is placed on the agenda, thereby denying to him the right to public comment which is afforded to every other citizen.  Garst -- and only Garst -- thus was prevented from speaking during the portions of Township meetings dedicated to the public to address the public body.

The evidence in the record also shows that defendants further attempted to deter plaintiffs from exercising their First Amendment rights by intentionally

attributing false statements to Garst in the official Minutes of the Township Board meetings, such as in the March 17, 2003 minutes which falsely reports that Garst singled out a specific firefighter in the child pornography investigation (Opp DMSJ, Ex. 4), and in the August 16, 2004 minutes, which falsely attributed to Garst a slanderous comment regarding the cemetery sexton, resulting in a February 22, 2005 correspondence to Garst threatening litigation (Opp DMSJ, Ex. 10).

Further, when it became known that Garst intended to seek recall of certain Township officials, defendants decided not to renew the farm lease plaintiffs had with the Township. While there is *per se* nothing wrong with this action, the fact remains that plaintiffs offered to match any offer on the property so that they would not lose the ability to farm the property. Yet despite this offer, the Township simply refused to deal with plaintiffs at any price (DMSJ, Ex. A at 57).

While Garst refused to back down and continued to criticize Township officials, on October 28, 2004, Zelda Lucas, then-Township Supervisor, and defendant Kevin R. Iott, then-candidate for the office of Township Supervisor, served a personal protection order (PPO) on Garst that prevented him from attending the Township Board meetings (DMSJ, Ex. A at 22, 76). The statement made in the application for the PPO by Supervisor Iott was not sworn, and his statement was contradicted by Supervisor Lucas' statement in support of the PPO. Garst denied that he ever took any wrongful actions against anyone, and the PPO was dissolved after 30 days (*Id.* at 22). However, this action was

designed solely to prevent Garst from speaking at a public meeting prior to the election.  Then, shortly after the election, Zelda Lucas' son filed a bogus lawsuit against Garst alleging assault.  A jury acquitted Garst of all charges on July 12. 2005 (DMSJ, Ex. A at 129-31).

Lastly, in 2009, after attempting for three years to have his site plan application considered by the township, Garst was cited for having a dangerous building (the building Garst intended to replace as part of his site plan application), and was prevented from addressing the Township Board regarding these issues (Opp DMSJ, Ex. 17).  Instead of being able to discuss these matters in a public forum, Garst was told that he may only address these issues at the "Dangerous Building Hearing" which would be held at plaintiffs' property, and not open to the public.  When Garst changed topics and attempted to discuss an illegal commercial trucking business and/or terminal located within the township, he was again prevented from addressing the board, and the Township attorney declared the public comment portion of the meeting closed (*Id*.).

Based on the above, plaintiffs submit that they have sufficiently demonstrated that defendants took adverse actions against them to prevent plaintiffs from exercising their First Amendment rights.  Plaintiffs submit that these actions were taken either in retaliation for plaintiff Garst's criticisms of Township officials, or to prevent Garst from engaging in further criticisms. Plaintiffs further submit that the actions in which defendants engaged, such as intentionally attributing false statements to Garst in official public meeting minutes (which resulted in at least one instance of someone threatening to sue

Garst), or making false statements about Garst in order to obtain a PPO, and or

filing false assault charges against Garst, were such that they would likely deter a

"a person of ordinary firmness."  As the court stated in *Fritz v. Charter Twp. of

Comstock*, 592 F.3d 718, 723 (6th Cir. 2010), actions such as "harassment or

publicizing facts damaging to a person's reputation" constitute the type of actions

which give rise at least to a genuine issue of material fact as to whether a person

of ordinary firmness would likely be deterred from continuing to speak out at

pubic meetings.  The evidence before this Court, as set forth in the references to

the record in plaintiffs' opposition brief, demonstrates that there is at least a

genuine issue of material fact as to whether defendants' actions would deter a

person of ordinary firmness from speaking out, sufficient to preclude a grant of

summary judgment.  Plaintiffs therefore respectfully request this Court reconsider

its grant of summary judgment as to plaintiffs' First Amendment claims and set

that decision aside, allowing this matter to proceed to trial.

## II.    THE EVIDENCE IN THE RECORD DEMONSTRATES THAT THERE EXIST GENUINE ISSUES OF MATERIAL FACT AS TO PLAINTIFFS' EQUAL PROTECTION CLAIMS

In their opposition to the motion for summary judgment, plaintiffs also set

forth the controlling case authority and evidence in the record which

demonstrated that there was a genuine issue of material fact as to whether

defendants had deprived plaintiffs of their rights to equal protection of the law as

guaranteed by the Fourteenth Amendment.  In its opinion, this Court determined

that plaintiffs did not identify a single instance of being treated differently from

similarly situated persons, and failed to identify a single person who was treated

differently than they were.  However, this decision also appears to not have
considered the evidence in the record which was before this Court.

Plaintiffs respectfully submit that they did identify other similarly-situated
entities which operated a commercial venture which were not required to submit
a site plan application.  For example, plaintiffs in their opposition identified to the
Court Mark LaRocca, the Township Constable, who is defendant Supervisor
Iott's brother-in-law, as the owner of a business which leases property within the
Township and which operates there despite not having submitted a site plan or
obtained any of the requisite permits for the business.  Defendant Supervisor Iott,
who drives a truck for this business, routinely parks the truck at this illegal
commercial trucking business and/or terminal (DMSJ, Ex. A at 25-26).  Even
though the Township is aware of these activities, it has never required LaRocca
to submit a site plan and/or pay any fees or obtain any permits, but instead
continues to allow LaRocca to operate illegally, while imposing different and
more harsh standards on plaintiffs.

Additionally, as Garst testified in his deposition, he was advised by
Township Supervisor Iott that, despite the fact that no enabling ordinance or
motion provided for this action, plaintiffs - and only plaintiffs - would be
responsible for additional fees, which had not heretofore been demanded of any
other applicant for site plan review (DMSJ, Ex. A. at 100).  This was confirmed by
the letter which Planning Commission Chair Reiter sent to Garst, outlining these
special fees, which had not been charged to any other applicant (Ex. 18; DMSJ,
Ex. A at 98).  Singling plaintiffs out for this discriminatory less favorable

treatment, which not been demanded of other site plan review applicants, thus caused plaintiffs to be treated differently than others who were similarly situated to plaintiffs, and violated plaintiffs' rights to equal protection.

Further, plaintiffs also maintained in their opposition to the motion for summary judgment that defendants deprived them of their rights to equal protection of the law by selectively enforcing Township ordinances against them because they engaged in the exercise of constitutional rights to petition and criticize the government.  Under the Equal Protection Clause, a party may bring a claim of selective enforcement of an otherwise valid law or regulation.  *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); *Hillside Prods, Inc. v. Duchane*, 249 F. Supp. 2d 880, 897 (E.D. Mich. 2003).  As the court set forth in *Hillside Prods, Inc.*, there are three types of selective enforcement claims.  Under the second type of selective enforcement claim, which is the type that plaintiffs alleged in the case at bar, a plaintiff must show an exercise of a protected right, the enforcer's "stake" in the exercise of that right; the unreasonableness of the enforcer's conduct; and that the enforcement was initiated with the intent to punish plaintiff. In considering this issue, the court in *Futernick v. Sumpter Twp.*, 78 F.3d 1051 (6th Cir. 1996) explained,

> selective enforcement intended to discourage or punish the
> exercise of a constitutional right, especially the right to criticize the
> government, is sufficient basis for §1983 relief.

*Id.* at 1057.  As the court held in *United States v. Bustamente*, 805 F.2d 201, 202 (6th Cir. 1986), impermissible considerations are not just to race or religion, but include the desire to prevent the exercise of constitutional rights.  Likewise, it is

- 14 -

well established that "retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment."  *Zilich v. Longo*, 34 F.3d 359 (6th Cir. 1994)

In their motion, defendants never addressed plaintiffs' selective enforcement claim.  Plaintiffs thus submit that it would be manifestly unjust to grant defendants summary judgment on plaintiffs' selective enforcement claim when defendants never sought summary judgment on that claim, and that summary judgment as to this claim should be set aside, allowing this claim to proceed to trial.  As the evidence in the record demonstrates, plaintiffs have exercised their constitutionally-protected right to petition and criticize the government.  Defendants, as those who were petitioned and criticized, clearly have a "stake" in not wanting plaintiffs to be able to exercise that right.  As plaintiffs have set forth above, defendants' conduct could only be considered unreasonable - for example, defendants' actions in obtaining a PPO on false grounds to stop Garst from speaking at public meetings; filing false criminal charges against him; terminating the lease for property on which he had been farming, despite his willingness to match any offer for the property; failing to review plaintiffs' site plan for three years; and the sham hearing under the "Dangerous Building Ordinance."   As Garst made clear throughout his deposition, this "enforcement" was initiated solely with the intent to punish plaintiffs for exercising their constitutional rights.  The evidence in the record before this Court thus demonstrated that there is at least a genuine issue of material fact that defendants selectively enforced the law and the Township's

ordinances against plaintiffs, to punish plaintiffs for exercising their First Amendment rights, sufficient to preclude summary judgment.

Plaintiffs submit that this evidence in the record raises at genuine issue of material fact as to plaintiffs' equal protection claims sufficient to preclude a grant of summary disposition.  Accordingly, plaintiffs respectfully request that this Court reconsider its grant of summary judgment as to plaintiffs' equal protection claims, and allow this matter to proceed to trial.

**III.   THE EVIDENCE IN THE RECORD DEMONSTRATES THAT THERE EXIST GENUINE ISSUES OF MATERIAL FACT AS TO PLAINTIFFS' PROCEDURAL AND SUBSTANTIVE DUE PROCESS CLAIMS**

In its decision granting summary judgment as to plaintiffs' procedural and substantive due process claims, this Court ruled that plaintiffs failed to demonstrate that defendants violated plaintiffs' rights to either substantive or procedural due process.  The basis for this holding was the increase of the site plan application fee, and that plaintiffs received notice in regards to the farm lease, the FOIA appeal opportunity, and the dangerous building violation. However, what this Court did not address was plaintiffs' submittal of their site plan application, and defendants' failure to consider it.  Defendants insist that they never received a site plan application, and in support, they rely solely upon the affidavit of Martin Weiderhold, which states that Garst did not leave any documents with him and he did not see Garst leave any documents in the township hall (DMSJ, Ex. F).

However, plaintiff Garst testified at length in his sworn deposition about this issue, and repeatedly stated that he did indeed leave the site plan application

at the Township Hall (DMSJ, Ex. A at 78-98).  Defendants never rebut this sworn

testimony.  Plaintiffs also attached a copy of the site plan application package to

their Complaint when it was filed - and defendants did not answer that this was

the first time they had ever seen it.  Further, the unrebutted evidence in the

record before this Court shows that defendants advised plaintiff Garst that they

could not find the application fee which plaintiffs had submitted, which caused

Garst to obtain a certified check for $300 (Opp DMSJ, Ex. 14; DMSJ, Ex. A at

88).  Defendants do not make any statements as to why Garst needed to submit

a check for $300 to the Township.  Indeed, the certified check has a notation

hand-written on the bottom of it that it was a replacement check for Check #3513,

which is the check submitted along with the site plan application (Opp DMSJ, Ex.

13).  It was only after the certified check was delivered that the Township then

began to claim that it never received the original site plan application, and

refused to accept copies of the plans unless Garst paid the substantially

increased fee (DMSJ, Ex. A at 91-96).

Plaintiffs submit that the evidence demonstrates that defendants did

receive the site plan application, and either lost it or refused to process it.  At the

very least, a factual dispute exists as to whether defendants received the site

plan application.  Summary judgment under Fed. R. Civ. P. 56 is appropriate only

when there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law.  The central inquiry is "whether the

evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The movant has an initial burden of showing "the absence of a genuine issues of material fact." *Id.* Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial, but the court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.* Credibility determinations are not appropriate at the summary judgment stage of proceedings. *Id.*

Plaintiffs submit that this Court erred by not believing the deposition testimony of Garst and the documentary evidence, and did not draw all justifiable inferences in plaintiffs' favor. Accordingly, plaintiffs respectfully request this Court reconsider its grant of summary judgment as to plaintiffs' due process claims, and allow this matter to proceed to trial.

**IV. THE EVIDENCE IN THE RECORD DEMONSTRATES THAT THERE EXIST GENUINE ISSUES OF MATERIAL FACT AS TO PLAINTIFFS' FREEDOM OF INFORMATION ACT AND OPEN MEETINGS ACT CLAIMS**

This Court in its opinion granting summary judgment determined that since there was not a quorum at the April 29, 2009 meeting, no "meeting" could have taken place, and thus there was no basis for plaintiffs' claims under the Freedom of Information Act ("FOIA"), M.C.L. 15.231 *et seq.*, and Open Meetings Act ("OMA"), M.C.L. 15.261 *et seq.* However, plaintiffs submit that this ruling does

not take into account case authority which states that even a subcommittee - which is less than a quorum of the full public body - must comply with the requirements of OMA.  Plaintiffs also submit that it appears the decision granting summary judgment on these issues did not consider that the April 29, 2009 meeting resulted in a decision by the Township to proffer a proposal to plaintiffs to resolve the disputed site plan application issue.  The April 30, 2009 correspondence from Planning Commission Chair Amy Reiter (Opp DMSJ, Ex. 18) laid out the proposal.  The April 30, 2009 correspondence was not the result of discussions between plaintiffs and defendants, it was the result of a decision by those at the April 29, 2009 meeting which was made on behalf of the Township and then communicated to plaintiffs.  Garst specifically testified about this proposal and communications relating to it, and defendants never deny that such a proposal was made (DMSJ, Ex. A at 99-100).

The OMA requires that all decisions of a public body shall be made at a meeting open to the public.  M.C.L. 15.263(2).  It is not disputed that the April 29, 2009 meeting was not open to the public.  Thus, the decision by the township officials on April 29, 2009 to send a proposed resolution to plaintiffs could only be seen as a violation of the OMA.  Plaintiffs respectfully submit that this Court may have overlooked the fact that the April 29, 2009 meeting led to an official action by the Township, and instead only analyzed whether there was a meeting as defined by the Open Meetings Act.

As the court made clear in *Booth Newspapers, Inc. v. Univ. of Mich. Bd. of Regents*, 444 Mich. 211, 507 N.W.2d 422 (1993), if a public body delegates its

authority to perform a function to a subcommittee, that subcommittee becomes a public body which must conform to the requirements of the OMA.  444 Mich. at 226.  Likewise in the case at bar, the Township delegated to the group which met on April 29, 2009 the task of deciding a resolution which to proffer to plaintiffs to resolve the issues as to plaintiffs' pending site plan application.  By failing to meet in public, defendants violated the OMA.  Accordingly, not only is there a genuine issue of material fact as to this issue, but plaintiffs submit that, by defendants' own admissions, these issues should have been decided in plaintiffs' favor.

As for the FOIA claim, this Court held that since there was no meeting, there were no documents that would be responsive to plaintiffs' FOIA request. However, plaintiffs' FOIA request not only requested the minutes from the April 29, 2009 meeting, it also requested any transcripts, notes, a list of the attendees, any postings noticing the meeting, and correspondences between attendees of the meeting (Opp DMSJ, Ex. 19). It is difficult to believe that Chair Reiter would send correspondence to plaintiffs the following day detailing the proposed resolution (Opp DMSJ, Ex. 18) based only on her mental recollection of what was discussed at the April 29, 2009 meeting, and not from any notes which were taken during the meeting.  Some record of this meeting should have been kept, if only to memorialize that which discussed.  Accordingly, plaintiffs respectfully request this Court reconsider its grant of summary judgment, and allow this matter to proceed to trial.

/s/  Cindy Rhodes Victor
CINDY RHODES VICTOR (P33613)
The Victor Firm, PLLC
Suite 327
3250 West Big Beaver Road
Troy, Michigan  48084
(248) 792-9320
cvictor@victorfirm.com

Attorneys for Plaintiffs

Dated:  January 3, 2011

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

**FMIO, INC., a Michigan corporation
and RICHARD A. GARST,**

               **Plaintiffs,**            **Case No. 2:09-cv-12561**

          **v.**                     **HONORABLE BERNARD A. FRIEDMAN**

**TOWNSHIP OF SUMMERFIELD,**     **HONORABLE MONA K. MAZJOUB,**
**MICHIGAN, a Michigan municipal**     **MAGISTRATE JUDGE**
**corporation, KEVIN R. IOTT in his official
and individual capacities, TAMMY
BLEASKA, in her official and individual
capacities, JOAN WIEDERHOLD, in her
official and individual capacities, DALE
WAGENKNECHT, in his official and
individual capacities, JAMES V. SEEGERT,
in his official and individual capacities,
AMY REITER, in her official and individual
capacities, RICHARD KORALESKI, in his
official and individual capacities, DAVID
GRUDE, in his official and individual
capacities, JOSEPH STRANGER, in his
official and individual capacities, LINDA
DIESING, in her official and individual
capacities, and MICHAEL STRAHAN, in
his official and individual capacities,
jointly and severally,**

               **Defendants.**

_____

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of January, 2011, I electronically filed

the foregoing Plaintiff's Motion for Reconsideration of this Court's Order Granting

Defendants' Motion for Summary Judgment and supporting brief, with this

Certificate of Service, with the Clerk of the Court using the ECF system which will

send notification of such filing to all counsel of record.

/s/ Steven R. McCollum
Steven R. McCollum

The Victor Firm, PLLC
Suite 327
3250 West Big Beaver Road
Dated:  January 3, 2011          Troy, Michigan  48084
(248) 792-9320
mccollum@victorfirm.com