# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Leonard Green<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: May 17, 2012

Mr. Frederick Lucas
Lucas & Baker
7757 US 12, Suite A
Onsted, MI 49265-0000

Ms. Cindy Rhodes Victor
Law Office
3290 W. Big Beaver Road
Suite 501
Troy, MI 48084

> Re: Case No. 11-1426, *FMIO, Inc., et al v. Township of Summerfield, et al*
> Originating Case No. : 2:09-CV-12561

Dear Counsel,

   The Court issued the enclosed Order today in this case.

> Sincerely yours,
>
> s/Cathryn Lovely
> Case Manager
> Direct Dial No. 513-564-7039

cc:  Mr. David J. Weaver

Enclosure

Mandate to issue

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No. 11-1426

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

```
FMIO, INC.; RICHARD A. GARST,              )
                                           )
    Plaintiffs-Appellants,                 )
                                           )   ON APPEAL FROM THE UNITED
v.                                         )   STATES DISTRICT COURT FOR
                                           )   THE EASTERN DISTRICT OF
TOWNSHIP OF SUMMERFIELD, et al.,           )   MICHIGAN
                                           )
    Defendants-Appellees.                  )
```

> FILED
> May 17, 2012
> LEONARD GREEN, Clerk

O R D E R

Before: SILER and KETHLEDGE, Circuit Judges; GRAHAM, District Judge.[*]

FMIO, Inc., a Michigan Corporation, and Richard Garst, its agent, appeal the district court's decision granting summary judgment to the defendants.

FMIO and Garst filed a complaint against the Township of Summerfield, Michigan, and several township officials. The plaintiffs alleged the following facts: Beginning in November 2000, Garst attended meetings of the Summerfield Township Board and made inquiries concerning allegations of child pornography incidents occurring at the township fire hall. At the time, Nick Lucas was the township fire chief and his mother, Zelda Lucas, was the supervisor of the township. At one of the meetings, Garst asked the members of the township board to resign, and he subsequently began, but did not complete, the process of circulating petitions to recall several board members. After a March 17, 2003 board meeting, during which Garst stated that there were certain township firemen who should not be around children because of an ongoing FBI child pornography

---

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

investigation, the minutes of the meeting falsely suggested that Garst named Randy LaRocca as one of those firemen.

In late 2003, Garst received a letter from the township stating that his lease agreement for certain farm property, which he had leased from 2000 through the end of 2003 for $6,550 per year, would not be renewed. The township solicited bids and leased the property to the highest bidder through the end of 2006. In May 2008, Garst again leased the property for $12,797 per year.

In 2004, Zelda Lucas served Garst with a personal protection order against stalking. In late 2004 or early 2005, Nick Lucas filed assault charges against Garst. Garst was subsequently acquitted. In February 2005, Garst received a letter from an attorney for David Kottke, the cemetery sexton for the township, accusing him of slandering Kottke based on a comment attributed to Garst in the minutes of an August 16, 2004 meeting of the township board. According to Kottke's attorney, Garst wrongfully implied that Kottke had stolen propane tanks belonging to the cemetery.

On May 15, 2006, the township board voted to increase the application fee for site plan review from $300 to $2,000, effective July 1, 2006. At that time, FMIO was in the process of developing plans necessary to replace its produce stand, which required approval of the site plan. On June 29, 2006, Garst delivered FMIO's completed site plan review application to the Summerfield Township Hall with a $300 application fee. Later in 2006, Garst inquired about the application with Amy Reiter, the chairperson of the Township Planning Commission, but he received no response. On November 13, 2006, the township informed Garst that it did not have the check that was submitted with the site plan review application. FMIO immediately issued a certified check to the township. On November 20, 2006, the township informed Garst that it could not find FMIO's site plan review application. In December 2006, the township informed Garst that it found the engineered drawings of FMIO's proposed produce stand, but could not find the application. Throughout 2007, Garst continued to inquire into the status of FMIO's application. Kevin Iott, the township supervisor, informed Garst that, to get the produce stand approved, FMIO would have to resubmit its application with the $2,000 application fee.

In September 2008, the township board adopted a dangerous building ordinance. In April 2009, Garst received notice that there would be a dangerous building inspection and hearing at the property where FMIO was planning to replace its produce stand. Garst was not allowed to address the status of FMIO's site plan review application at the next township board meeting, but was instructed to bring the issue up during the dangerous building hearing. The dangerous building hearing was adjourned shortly after it began because township officials had not posted a notice on the building as required by the ordinance.

On April 29, 2009, several township officials met to discuss FMIO's site plan review application. The following day, Reiter drafted a letter to Garst memorializing a conversation between them in which they attempted to resolve the issues concerning the application. It was agreed that FMIO would resubmit its application with a $300 filing fee and be responsible for certain fees incurred during the review process. The township board did not approve the correspondence from Reiter until the May 18, 2009 township meeting. On May 15, 2009, Garst requested under Michigan's Freedom of Information Act the records of the April 29, 2009 township meeting. The township responded that no records were kept because there was no "meeting" under Michigan law.

Based on these factual allegations, the plaintiffs asserted numerous causes of action under 42 U.S.C. §§ 1983, 1985, and 1986 and under Michigan law. As relevant to this appeal, the plaintiffs' claims for relief included the following: (1) the defendants violated their substantive and procedural due process rights and their right to equal protection; (2) the defendants defamed them and retaliated against them for exercising their First Amendment rights; and (3) the defendants violated Michigan's Open Meetings Act, Freedom of Information Act, and Right to Farm Act. The plaintiffs sought monetary and injunctive relief. The district court granted summary judgment to the defendants and denied the plaintiffs' motion for reconsideration.

On appeal, the plaintiffs argue that the district court erred by granting summary judgment to the defendants. We review de novo a district court's grant of summary judgment. *Franklin v. Kellogg Co.*, 619 F.3d 604, 610 (6th Cir. 2010). Summary judgment is proper "if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The plaintiffs first argue that the defendants violated their substantive due process rights in several ways: (1) they increased the fee for site plan review applications because they knew the plaintiffs were planning to submit an application; (2) they failed to act on the plaintiffs' site plan review application; and (3) they initiated proceedings against the plaintiffs under the dangerous building ordinance without evidence that the plaintiffs' building was dangerous, and they failed to prosecute similarly-situated landowners. The plaintiffs also argue that the defendants denied them procedural due process by failing to act on their site plan review application. To establish a substantive due process claim, a plaintiff must demonstrate that a constitutionally protected property or liberty interest has been deprived through arbitrary and capricious action. *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008). Procedural due process requires that an individual be provided with notice and an opportunity to be heard before being deprived of a protected property interest. *Id.* at 572.

The district court properly granted summary judgment to the defendants on these claims. The plaintiffs failed to present evidence demonstrating that (1) the defendants knew the plaintiffs were planning to submit a site plan review application when the application fee was increased; (2) there was no legitimate basis for initiating proceedings against the plaintiffs under the dangerous buildings ordinance; or (3) the defendants did not enforce the ordinance against similarly-situated landowners. Further, the evidence concerning the defendants' requests for resubmission of the application materials, the plaintiffs' failure to do so, and the defendants' other attempts to resolve the dispute over the application was insufficient to establish that the defendants arbitrarily and capriciously refused to process the application, *see N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 485 (9th Cir. 2008), or that they denied the plaintiffs notice and an opportunity to be heard on the issue.

The plaintiffs next argue that the defendants violated their equal protection rights by requiring them to pay additional fees to have their site plan review application processed that were not assessed to other applicants and by selectively enforcing the dangerous buildings ordinance

against them.  The district court properly granted summary judgment to the defendants on this claim because the plaintiffs failed to present evidence demonstrating either that other applicants were not required to pay the additional fees or that the defendants did not enforce the dangerous buildings ordinance against individuals who were similarly situated to the plaintiffs.  *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

The plaintiffs next argue that the defendants retaliated against them for exercising their First Amendment rights.  The retaliation claim was based on the following actions of the defendants:  (1) obtaining a protective order against Garst and filing false assault charges against him; (2) falsely attributing defamatory statements to Garst in the minutes of township meetings; (3) refusing to continue the lease agreement with the plaintiffs in 2003; (4) increasing the site plan review application fee and failing to process the plaintiffs' application; (5) passing the dangerous building ordinance and selectively enforcing it against the plaintiffs; and (6) prohibiting Garst from speaking at township meetings.  The district court properly granted summary judgment to the defendants on this claim because the plaintiffs failed to present evidence demonstrating that the alleged retaliatory acts were motivated by the plaintiffs' exercise of their First Amendment rights.  *See Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010).

The plaintiffs next argue that the defendants violated Michigan's Open Meetings Act in two respects:  (1) by conducting a non-public meeting on April 29, 2009, and by failing to keep records of that meeting; and (2) by making a decision to accept the terms stated in Reiter's subsequent letter to Garst without conducting a public meeting. The plaintiffs further argue that the defendants violated Michigan's Freedom of Information Act by failing to keep records of the April 29, 2009 meeting and provide them to the plaintiffs upon request.  The district court properly granted summary judgment to the defendants on these claims.  The plaintiffs failed to present evidence demonstrating that a quorum of a public body was present on April 29, 2009, such that the requirements of the Open Meetings Act were applicable.  *See* Mich. Comp. Laws §§ 15.262(b), 15.263(1), 15.269(1).  Because no records of the meeting needed to be kept, the defendants did not violate Michigan's Freedom of Information Act, Mich. Comp. Laws § 15.231, et seq., by failing to

produce records to the plaintiffs. Finally, the plaintiffs' evidence failed to demonstrate that the township board improperly decided to accept the terms set forth in Reiter's letter to Garst prior to the regular public meeting on May 18, 2009. *See* Mich. Comp. Laws §§ 15.262(d), 15.263(1)-(3), 15.270(2).

The plaintiffs next argue that the defendants violated their rights under Michigan's Right to Farm Act, Mich. Comp. Laws § 286.471, et seq. The district court properly granted summary judgment to the defendants on this claim because the provisions of the Right to Farm Act, which prohibits nuisance litigation against farm operations, *see Northville Twp. v. Coyne*, 429 N.W.2d 185, 186 (Mich. Ct. App. 1988), were not implicated by the defendants' actions.

Finally, the plaintiffs argue that the defendants defamed them by using false statements to obtain the personal protection order, by falsely attributing statements to Garst in the minutes of the March 17, 2003 and August 16, 2004 township meetings, and by stating that they failed to submit a site plan review application and that they had a dangerous building on their property. The district court properly granted summary judgment to the defendants on this claim because several of the statements at issue did not tend to lower the plaintiffs' reputation in the community or deter third persons from associating or dealing with them, *see Kevorkian v. Am. Med. Ass'n*, 602 N.W.2d 233, 236 (Mich. Ct. App. 1999), and, in any case, the plaintiffs failed to present evidence of actual damages resulting from the defendants' actions. *See* Mich. Comp. Laws § 600.2911(2)(a), (7).

Accordingly, we affirm the district court's judgment.

ENTERED BY ORDER OF THE COURT

Clerk